724 A.2d 293

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Alan PURSELL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 18, 1994.

Decided Jan. 19, 1999.

Reargument Denied April 5, 1999.

236

238

244

Alan Pursell, Pro se.

William R. Cunningham, Kenneth A. Zak, Erie, for the Com.; Robert A. Graci, for Office of the Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Alan Pursell (Appellant) appeals an Order of the Court of Common Pleas of Erie County that denied his petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 et seq., which challenged his conviction and sentence of death for murder in the first degree.[1] We affirm the order of the PCRA court.

## I. FACTS AND PROCEDURAL HISTORY

In the Opinion announcing this Court's decision in Appellant's direct appeal, the facts of this case were summarized as follows:

On July 24, 1981, in a secluded wooded area of Lawrence Park Township, James Feeney found the victim's nude body, its face drenched with blood. A twenty-five-foot tree branch lay across the throat which was wrapped in shirt material. After viewing the corpse, the County Coroner estimated that the victim had been dead for twelve to fifteen hours, placing the time of death between midnight and three o'clock, a.m., on July 24, 1981. An autopsy revealed that prior to death, the victim had sustained fifteen blows to the head with a jagged, blunt object, and had suffered various

---

1. This is an appeal from the denial of PCRA relief and not a direct appeal from judgment of sentence. Exclusive jurisdiction of appeals from final orders denying post conviction relief in cases in which the death penalty has been imposed is vested in this Court. 42 Pa.C.S. § 722(4), 42 Pa.C.S. § 9546(d).

bruises, a broken nose, internal hemorrhaging in the neck, swollen eyes, and a crushed windpipe. The crushed windpipe was determined to be the cause of death. After the victim's death, his body was subjected to burns on parts of the torso, and trauma to the chest and scrotum, part of which was crushed.

A blood-covered jagged rock was found near the body. The blood was similar to the victim's; the lacerations and punctures on the victim's head were caused by this rock. The nearest rocks were two hundred feet from the body and were similar to the rock used to strike the victim. A pair of glasses found near the body was identified as those made and sold to Appellant by his optometrist, Dr. Perry. On July 25, 1981, the day following the death, Appellant returned to Dr. Perry and ordered another, identical pair of glasses.

Blood found on Appellant's shoes was consistent with that of the victim's. Blood was also found on other items of clothing worn by Appellant on July 24, 1981. This blood could not be accurately examined because the clothes had been washed.

Appellant's mother testified that Appellant came home on July 23, 1981, at 10:30 p.m. She recalled that he was covered with blood and asked her to say that he had come home early. Mrs. Pursell also testified that she was extremely upset when she heard about the murder on the evening news (July 24, 1981)—so much so that she required medication to calm down—and that Appellant was aware of her reaction upon hearing of the victim's death.

Finally, on July 27, 1981, while listening to a newscast reporting developments in this case, Appellant turned to his girlfriend, with whom he was watching the seven o'clock newscast, and asked whether she thought a person could be traced through his glasses. No mention had been made in any report that glasses had been found at the scene.

*Commonwealth v. Pursell,* 508 Pa. 212, 218–220, 495 A.2d 183, 186–187 (1985).

On July 28, 1981, police arrested the Appellant and a jury in the Erie County Court of Common Pleas later tried him with the Honorable Jess S. Jiuliante presiding. The jury returned a verdict of guilty of first-degree murder on January 26, 1982, and at the conclusion of the penalty phase of the trial, the jury sentenced the Appellant to death.

The trial court, sitting *en banc*, denied Appellant's post-trial motions and formally imposed the sentence of death. The record in this case reveals that while this case was pending before the trial court and court-appointed counsel represented the Appellant, *pro se* pleadings were also filed by Appellant, including the following:

December 7, 1981 Motion to Set Pre-verdict Bond

December 13, 1982 Motion for Court Ordered Contact Visit for Petitioner with His Wife and Two Children

December 13, 1982 Motion for Transcripts of Previous Proceedings

March 24, 1983 Declaration of Defendant in Support of Marsden Hearing

December 16, 1982 Motion for Court Ordered Legal Supplies (Stationery)

December 16, 1982 Motion for Co–Counsel Status of Defendant

December 16, 1982 Petition for Order Compelling Investigation of Perjury Prosecution Witnesses

December 16, 1982 Motion for Defendant to Proceed in Propria Persona

January 10, 1983 Motion to Disqualify All Assistant District Attorneys and to Have a District Attorney (or Assistant) from Outside of Erie County

March 8, 1983 Motion to File Amendments to Defendant's Motion for Arrest of Judgment and/or New Trial Filed by Counsel for Defendant

August 31, 1983 Petition for a Writ of Habeas Corpus

February 1, 1984 Application for Order Mandating Clerk of Courts and/or Court Stenographer to Furnish Court Rec-

ords and Transcribed Notes of Testimony In Forma Pauperis

On direct appeal, this Court affirmed the judgment of sentence on June 26, 1985. The Appellant then filed the following *pro se* petitions seeking post conviction relief:

September 15, 1986 Petition for Appointment of Counsel to Help Prepare a P.C.H.A.[2] Petition

September 25, 1990 Application for Order Mandating Clerk of Courts, and/or Court Stenographer, and/or Attorney Dennis Williams, or Attorney Michelle Hawk, to Furnish Court Records and Transcribed Notes of Testimony In Forma Pauperis, of Defendant's Capital Trial for Utilization in Pending Federal Court Litigation

December 7, 1990 Application for the Appointment of Legal Counsel to Represent the Defendant Alan Pursell, in Post–Conviction Collateral Proceedings, Under 42 Pa.C.S. § 9541 et. seq., pursuant to Rule 1504(a), (c), (d) of the Pennsylvania Rules of Criminal Procedure, and, the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution, and, 42 Pa.C.S. § 250, In Forma Pauperis Pursuant to Rule 1504(e) of the Pennsylvania Rules of Criminal Procedure

May 29, 1991 Application for Extraordinary Relief to Assume Plenary Jurisdiction of Matters Pending Before the Court of Common Pleas

Judge Jiuliante appointed counsel to represent Appellant to prepare a post conviction relief petition on June 24, 1991. Court-appointed counsel filed an amended PCRA petition that raised three issues. After court-appointed counsel filed the Amended PCRA Petition, the Appellant requested new counsel. He also requested leave to supplement the counseled Amended PCRA Petition.[3] The trial court denied both of

2. The Post Conviction Hearing Act (PCHA) was the predecessor statute to the PCRA. The Legislature amended and replaced the PCHA when it enacted the PCRA on April 13, 1988.

3. The record contains an Order dated March 9, 1993, in which the PCRA court denied the Appellant's "Pro Se Motion Requesting Leave to

those motions and later denied the Amended PCRA Petition on March 26, 1993. Judge Jiuliante did not file an Opinion, but the Order stated that the issues raised in the Amended PCRA Petition were previously litigated or waived.[4]

The Appellant then filed this *pro se* appeal. He raises the three issues addressed by the PCRA court and twenty-seven claims that court-appointed PCRA counsel declined to advance, and which the trial court refused to allow him to raise *pro se* while counsel represented him. On January 15, 1997, this Court directed the trial court to prepare a Statement of Reasons in Support of its Order dated March 26, 1993.

Because Judge Jiuliante is now a senior judge on the Commonwealth Court, this case was assigned to the Honorable Ernest J. DiSantis, Jr., who conducted a status conference. After that status conference, Robert B. Dunham, Esquire, an attorney for the Pennsylvania Capital Resource Center, presented the PCRA court with an unfiled motion on the Appellant's behalf requesting another status conference. Mr. Dunham did not file an entry of appearance, nor did he file his motion with the Court of Common Pleas. Nevertheless, the PCRA court held a second status conference via telephone on March 21, 1997 and permitted Mr. Dunham to represent the Appellant. The notes of testimony from that status conference are included in the record transmitted to this Court.

During that status conference, Mr. Dunham informed the court that Appellant had retained his organization. Notes of testimony, March 21, 1997, p. 6. He asked the court to conduct an evidentiary hearing and to permit him to file another

Supplement Court Appointed Counsel's Amended P.C.R.A. Petition, and Request for Appointment of New Counsel to Represent Petitioner in the Preparation and Prosecution of a Properly Prepared Post Conviction Relief Act Petition." We note that a copy of that *pro se* motion is not included in the record.

4. While Appellant's PCRA petition was pending before Judge Jiuliante, Appellant filed an appeal to this Court. We dismissed the appeal without prejudice and ordered the trial court to proceed with Appellant's pending PCRA petition. *Commonwealth ex rel. Pursell v. Morgan*, 532 Pa. 296, 615 A.2d 732 (1992).

amended PCRA petition. *Id.* at 5, 6. In the alternative, Mr. Dunham requested permission to file a brief for Appellant.[5] *Id.* at 8. The PCRA court denied those requests and issued an Opinion on April 25, 1997, which addressed the merits of the three issues raised in the amended PCRA petition filed by previous court-appointed counsel. Judge DiSantis concluded that Judge Jiuliante properly determined that Appellant was not entitled to relief based on the three issues raised in the amended PCRA Petition. Regarding the additional issues that Appellant has raised in this appeal, Judge DiSantis stated the following:

> After this Court's review of the appellate record, it appears that appellant has raised additional claims, all or some of which were included in his *pro se* motion which was filed prior to his counseled amended PCRA petition. The amended petition included only those claims PCRA counsel deemed meritorious. This Court has not addressed those *pro se* claims not included in the amended petition because to do so would exceed the Supreme Court's mandate. Nevertheless, although I do not make it formally a part of my review, it would appear that those claims are also barred by the PCRA's waiver provision. However, I leave it to the Supreme Court to determine whether or not it wishes to address appellant's *pro se* claims as part of its review.

Opinion of the trial court, April 21, 1997, p. 9–10, n. 3.

## II. *DISCUSSION*

### A. *APPELLANT'S AUGMENTATION OF AMENDED PCRA PETITION*

Appellant requested, and was provided with, court-appointed counsel to prepare an amended PCRA petition, and counsel decided to advance three issues before the PCRA Court. Appellant now seeks to argue, in addition to those three issues raised by PCRA counsel, twenty-seven other issues framed as

---

5. Mr. Dunham's organization, the Pennsylvania Capital Resource Center, represented the Appellant in the Court of Common Pleas but is not representing the Appellant in his appeal to this Court.

"layered" ineffectiveness of counsel claims, contending that PCRA counsel was ineffective for failing to raise the other instances of prior counsel's ineffectiveness, as stated in Appellant's initial *pro se* petition. Because the PCRA court did not address these issues, we do not have the benefit of a complete record or the reasoning of that court. We recognize that the Appellant attempted to raise these issues *pro se* while counsel in the PCRA proceedings represented him.

A defendant has the constitutional right to proceed without counsel if the decision to do so is knowing and voluntary. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), *accord, Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978). The same constitutional right does not apply to a defendant like the Appellant, who was represented by counsel but also wanted to be his own co-counsel. *Commonwealth v. Ellis,* 534 Pa. 176, 626 A.2d 1137 (1993). This court's Opinion in *Ellis* reiterated the following policy reasons stated by the Superior Court concerning why that court will not review *pro se* briefs when an appellant is represented by counsel:

1. permitting the *pro se* brief may involve a conflict between lawyer and client, and this conflict could undermine appellant's chance of success;
2. counsel is obligated to submit to the appellate court only those issues which he believes to possess merit;
3. under no other circumstances are counsel and client permitted to present opposing arguments, as may well happen if both are permitted to submit briefs; and
4. reviewing *pro se* briefs of counseled appellants would lead to procedural confusion and delay in the appellate process because of the need for the court and the Commonwealth to review and evaluate additional *pro se* briefs.

*Ellis,* 534 Pa. at 179–180, 626 A.2d at 1138–1139.

This Court held in *Ellis* that a defendant in a criminal case may not confuse and overburden the courts by filing his own *pro se* briefs at the same time his counsel is filing briefs for him. *Id.* There is no right to that type of hybrid representa-

tion at trial or on appeal, and the decision whether to allow such hybrid representation is within the sound discretion of the trial court. *Id.*

This Court further explained the *Ellis* decision in *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994), in which we held that the Superior Court may prohibit the filing of *pro se* briefs by appellants represented by counsel on appeal. In *Rogers*, our decision stated that we may require that appellants remain with counsel through the appeal once counsel has filed a brief because to do otherwise would result in the confusion and overburdening of the court described in *Ellis*.

The rationale of our decisions in *Ellis* and *Rogers* applies equally to PCRA proceedings in the Court of Common Pleas. We will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represent those defendants. After reviewing the entire record of this case, there is no basis for this Court to conclude that the PCRA court abused its discretion when it refused to consider the issues raised in the Appellant's *pro se* pleading. To the contrary, the Appellant's long history of filing extensive *pro se* pleadings while counsel in this litigation represented him should weigh heavily against a court considering the merits of his filings. We therefore conclude that the PCRA court properly denied the Appellant's request to supplement the Amended PCRA Petition.

### B. CLAIMS OF INEFFECTIVENESS OF PCRA COUNSEL

Appellant, however, in this *pro se* appeal, has transformed the issues that he requested PCRA counsel to include in his PCRA petition into numerous claims of the ineffectiveness of PCRA counsel for failing to raise these issues in the Amended PCRA Petition. Because this is the first opportunity that Appellant has to challenge the stewardship of PCRA counsel, an appellate court may review these claims of ineffective assistance of counsel. *See Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (Pa.1998) (claim of ineffectiveness must be raised at the earliest possible stage in proceedings at

which counsel whose effectiveness is challenged no longer represents defendant); *Commonwealth v. Christy*, 540 Pa. 192, 201, 656 A.2d 877, 881 (1995) (ineffective assistance of counsel excuses waiver under the PCRA). The provisions in the PCRA regarding waiver of issues, coupled with the requirement of proper preservation of issues for appellate review on direct appeals, force a petitioner to frame his claims as "layered" ineffectiveness claims, because there has usually been waiver by previous counsel's failure to raise or preserve the underlying issue the petitioner wants the PCRA court to address.[6] Moreover, we recently held that we would no longer apply the "relaxed waiver" rule applicable to direct appellate review of capital cases in appeals from post-conviction proceedings in capital cases. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). Instead, we now require strict adherence to the statutory language of the PCRA, and will afford post-conviction review only where a petitioner shows that the statutory exceptions to waiver in the PCRA apply, or where a petitioner properly raises claims of counsel's ineffectiveness.[7] Because this represents a clarification of our exist-

**6.** For example, suppose trial counsel fails to object to the improper use of a defendant's prior criminal record. The issue of whether the defendant should receive a new trial as a result of this improper use of his prior criminal record is waived for purposes of appellate review because there was no timely objection at trial. However, in either post-trial motions or, less preferably, in his brief to the Superior Court, the defendant who obtains new counsel post-trial can then raise a claim of trial counsel's ineffectiveness for failing to object to the use of the defendant's prior criminal record. If that new, post-trial counsel fails to raise trial counsel's ineffectiveness, that issue of trial counsel's ineffectiveness is waived. The defendant who obtains new counsel in a post-conviction proceeding must then raise prior appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness for failing to object to the use of defendant's prior criminal record. If PCRA counsel does not raise in the PCRA petition prior appellate counsel's ineffectiveness, then that claim of prior appellate counsel's ineffectiveness is waived, but that waiver gives rise to a claim of PCRA counsel's ineffectiveness for failing to raise prior counsels' ineffectiveness.

The last stage of this exhausting scenario is what Appellant presents here with these claims of PCRA counsel's ineffectiveness.

**7.** We noted in *Albrecht* that the legislature amended the PCRA in 1995 and eliminated the statutory exceptions formerly contained in 42 Pa.

ing standard for reviewing appeals from the denial of post-conviction petitions in capital cases, we apply the *Albrecht* standard to all similar cases currently under review by this Court.

The assertion of claims arising from PCRA counsel's ineffectiveness present unique problems when raised in a capital case. In the first instance, any claim that is based on counsel's ineffectiveness must relate to ineffectiveness at a stage of criminal proceedings where a defendant has a right to counsel. *See Commonwealth v. Christy*, 540 Pa. 192, 201, 656 A.2d 877, 881 (1995). In other words, if the defendant has no right to counsel in a PCRA proceeding, he has no basis for claims of the ineffectiveness of PCRA counsel. In *Albrecht*, this Court held that although defendants do not have a Sixth Amendment right to counsel in PCRA proceedings, there is an enforceable right to post-conviction counsel created by Pennsylvania Rules of Criminal Procedure 1503 and 1504. *Albrecht*, 720 A.2d at 699–700. Thus, claims of PCRA counsel's ineffectiveness may provide a basis for relief.

Secondly, appeals from the denial of PCRA petitions in capital cases are filed directly with this Court. 42 Pa.C.S. § 722(4); 42 Pa.C.S. § 9546(d). When claims of PCRA counsel's ineffectiveness are raised for the first time to this Court, we are without the benefit of a record created specifically for those ineffectiveness claims. This Court is then in an unusual position—though one commonly experienced by the Superior Court when it addresses claims of trial counsel's ineffectiveness raised on direct appeal without the benefit of a record created by post-trial motions on the claims—of having to review ineffectiveness claims with no record created specifically for those claims and no trial court opinion addressing those

C.S. §9543(a)(3)(i), (ii), and (iii). These provisions permitted post-conviction review of waived issues in very limited circumstances. The instant petition, however, is governed by the pre–1995 version of the PCRA, and therefore the statutory exceptions would apply. We also held in *Albrecht* that a properly layered claim challenging PCRA counsel's ineffectiveness would not be waived, and can be reviewed on appeal from the denial of the PCRA petition.

claims.[8]

We find guidance from the standards developed for situations where counsel alleges his own ineffectiveness on appeal, and where claims of ineffectiveness of counsel are raised for the first time on direct appeal. When an appellant presents a claim of arguable merit, and there has been no evidentiary hearing in the trial court, we ordinarily remand to permit the parties to develop the record. *Commonwealth v. Lebo,* 713 A.2d 1158, 1163 (Pa.Super.1998). Where, however, it is clear from the existing record that: (1) counsel was ineffective, or (2) the ineffectiveness claim is meritless, then we will rule accordingly without remanding. *See Commonwealth v. Green,* 551 Pa. 88, 709 A.2d 382, 384 (Pa.1998) (citing *Commonwealth v. McBee,* 513 Pa. 255, 261, 520 A.2d 10, 13 (1986)).

We are therefore presented in this appeal with two types of appellate issues. The Appellant raises three issues in his present *pro se* appeal, which he raised in his counseled amended PCRA petition, and which the PCRA court decided. Accordingly, these are issues that the Appellant had an opportunity to develop before the PCRA court. Additionally, Appellant raises numerous claims of the ineffectiveness of PCRA counsel for failing to present various issues to the PCRA court. These claims, which were not presented to the PCRA court, will be reviewed according to the standard described above to determine whether they have merit and require further evidentiary hearings. If these claims of PCRA counsel's ineffectiveness lack merit, no remand is necessary and Appellant's appeal may be disposed of.[9]

**8.** There is no record created specifically for these claims of PCRA counsel's ineffectiveness because there is no mechanism to create such a record. In contrast to the procedures available to a defendant following trial, where post-trial motions alleging ineffectiveness of trial counsel allow the creation of a record on those claims, neither the PCRA nor the Rules of Criminal Procedure make provision for the creation of a record after the denial of the PCRA petition to address claims of PCRA counsel's ineffectiveness. Naturally, the PCRA court would not address claims of PCRA counsel's ineffectiveness because they would not have been raised before it.

**9.** We note that finding that Appellant's claim has "merit" to warrant further review does not mean that Appellant need show only the first

### 1. *Omnibus Claim of PCRA Counsel's Ineffectiveness*

Appellant first asserts, as a distinct issue, an omnibus claim that trial counsel was ineffective for "plagiarizing" his previous *pro se* filings and for failing to pursue twenty-seven issues included in Appellant's previous *pro se* filings but not included in the amended, counseled PCRA petition. He makes a generalized claim that PCRA counsel was ineffective in the manner in which he presented the issues to the PCRA court, and that counsel who was unwilling to pursue all claims of error previously asserted by Appellant denied him the assistance of representation of PCRA counsel.

We find nothing in the presentation of the issues preserved in the amended PCRA petition to suggest that PCRA counsel's method of advocacy constituted ineffective assistance of counsel on these grounds. Counsel adequately presented these claims and Appellant's assertion of "plagiarizing" is absurd. Regarding Appellant's claim that PCRA counsel was ineffective for failing to pursue twenty-seven issues that Appellant sought to include in his PCRA petition, it is axiomatic that counsel will not be considered ineffective for failing to pursue meritless claims. *Commonwealth v. Parker*, 503 Pa. 336, 341, 469 A.2d 582, 584 (1983). Appellant will only be entitled to relief if he can show: (1) that his claim has arguable merit; (2) that counsel's actions or inaction was not the product of a reasonable strategic decision; and, (3) that he suffered prejudice because of counsel's action or inaction. *Commonwealth v. Washington*, 547 Pa. 550, 557, 692 A.2d 1018, 1021 (1997). Thus, Appellant's generalized claim of

element of the three-prong test employed to evaluate claims of ineffective assistance of counsel. *See, e.g., Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). All claims of ineffective assistance of counsel require a showing of prejudice, and there is no need to remand for evidentiary hearings on a claim that, while it may meet the first prong of the *Pierce* test, cannot show resulting prejudice to the Appellant. *Cf. Commonwealth v. Lebo*, 713 A.2d 1158, 1163 (Pa.Super.1998) ("[w]here...the record demonstrates that the claim lacks arguable merit, or that no prejudice resulted, no evidentiary hearing is needed"). Prejudice, in the context of ineffective assistance of counsel, means that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the trial would have been different. *Commonwealth v. Craver*, 547 Pa. 17, 22, 688 A.2d 691, 694 (1997).

PCRA counsel's ineffectiveness will not prevail unless he shows PCRA counsel was ineffective in failing to pursue a meritorious issue that Appellant attempted to include in the PCRA petition but that was omitted from the counseled, amended PCRA petition. We therefore turn to Appellant's specific allegations.

### 2. *Right to Proceed Pro Se on Appeal*

■ Appellant asserts that he was denied his right to self-representation on his direct appeal because of the denial by the trial court of his *pro se* "Motion for Defendant to Proceed in Propria Persona." He does not raise this issue as one of PCRA counsel's ineffectiveness for failing to raise it, nor does he rely on the statutory exceptions to waiver to obtain PCRA relief on this issue. Therefore, the claim is waived. *See Commonwealth v. Albrecht, supra.*

### 3. *Second Degree Murder Jury Charge*

■ Appellant next claims that PCRA counsel was ineffective for failing to raise prior counsels' ineffectiveness in not raising, in his direct appeal, the issue of whether the jury should have been given a charge on second degree murder. The record shows that the jury was instructed on first-degree murder, third degree murder, voluntary manslaughter, or acquittal. In order for second degree murder to apply, there must be evidence that a criminal homicide was committed during the perpetration of a felony. 18 Pa.C.S. § 2502(b). Appellant asserts, without citation to any of the trial record, that there was evidence of robbery, aggravated assault, and arson. This mere assertion of the existence of evidence of other felonies, without reference to supporting testimony in the trial court record, is insufficient for Appellant to meet his burden on this issue. *See Commonwealth v. Saranchak,* 544 Pa. 158, 172, 675 A.2d 268, 275 (1996). Further, our review of the record indicates that there was no evidence to support a second-degree murder charge. Therefore, counsel will not be deemed ineffective for failing to raise this claim that has no merit.

### 4. *Failure to Obtain Medical Records and Witnesses*

Appellant claims that PCRA counsel was ineffective for failing to raise prior counsels' ineffectiveness for failing to obtain Appellant's medical records. In a convoluted writing, Appellant claims that: (1) the district attorney's office committed a *Brady* violation by failing to turn over to Appellant's trial counsel medical records from Appellant's treating physician and hospital pertaining to a course of treatment he received in August and September of 1981; and, (2) that trial counsel was ineffective for failing to obtain these records and use them to develop a defense that Appellant was physically incapable of committing the crime. The purported *Brady* violation is absurd, as Appellant offers no explanation of why his own medical records were not available to him, or how the Commonwealth purportedly "suppressed" them. A violation of *Brady* requires that the prosecution intentionally withhold exculpatory evidence that was material to the issues to be tried or evidence that materially undermines the credibility of an important prosecution witness. *Commonwealth v. Mulholland*, 549 Pa. 634, 647, 702 A.2d 1027, 1033 (1997). The Commonwealth does not violate the *Brady* rule when it fails to turn over evidence readily obtainable by, and known to, the defendant. *See Commonwealth v. Appel*, 547 Pa. 171, 205, 689 A.2d 891, 908 (1997). Since this alleged *Brady* violation has no merit, we will not deem counsel ineffective for failing to raise it.

Regarding Appellant's argument that trial counsel was ineffective for failing to obtain the medical records in aid of a defense theory that Appellant was physically incapable of committing the crime, this claim lacks merit. The only reference in his brief to medical treatment concerns surgical procedures and related treatment that occurred in August and September of 1981, subsequent to the date the murder was committed.[10] Appellant fails to offer any connection between

**10.** Appellant claims that the surgery was to remove two pins placed in his clavicle in a previous surgery, and that the treatment was for an infection that developed as a result of the surgery. There was testimony concerning this infection from an emergency room physician who

his course of treatment in August and September of 1981, and his physical condition at the time of the July 1981 murder. Furthermore, considering the testimony from his employer, Mr. Walter Kowalczyk,[11] that Appellant had no physical difficulty shoveling scrap metal and operating an air hammer, and generally performing heavy labor, we cannot find prejudice from counsel's failure to pursue this defense theory of Appellant's purported physical incapacity.[12]

Appellant also alleges prior counsels' ineffectiveness for failing to call medical witnesses to testify regarding Appellant's bad back, in support of a defense theory that Appellant was physically incapable of committing the murder. He claims that he was treated for back problems while incarcerated in the Newcastle Youth Center, and that he had worn a specially designed back brace to remedy the problem.

Appellant's claim is without merit. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the defendant must show: (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on Appellant's behalf; and (5) that the absence of the testimony prejudiced the Appellant. *Commonwealth v. Crawley,* 541 Pa. 408, 414, 663 A.2d 676, 679 (1995). Appellant does not identify the witnesses who would testify favorably concerning his purported back problem, nor does he show that these unnamed witnesses would have testified on his behalf. Appellant has failed to meet his burden to raise even a prima facie claim of counsel's ineffectiveness on this basis.

saw, but did not treat, Appellant the day after the murder, and testimony from his mother regarding his previous surgery.

**11.** Appellant was employed as a temporary laborer, beginning on July 18, 1981 and ending on July 21, 1981.

**12.** Appellant's counsel did question him on direct examination about his surgery and related treatment.

### 5. *Failure to Raise Brady Violation*

Appellant asserts PCRA counsel's ineffectiveness for failing to raise prior counsels' ineffectiveness for not raising an issue of a purported *Brady* violation by the district attorney's failure to give Appellant, or his counsel, information regarding a police investigation of reports of other sexual advances towards teenage boys by a perpetrator whose description did not match Appellant. According to Appellant, these reports suggest a possible additional suspect for the murder, as the sexual advances were made close to Lawrence Park and during the two months preceding the murder. Appellant relies primarily on news reports of these incidents, which mention teenage complainants and refer to police reports of the incidents. Again, Appellant claims: (1) a *Brady* violation by prosecutors for allegedly failing to turn over the police reports concerning these incidents in the Lawrence Park area; and, (2) ineffectiveness of trial counsel for failing to pursue production of the purportedly-suppressed material and to secure favorable witnesses for trial from that material. With respect to the purported *Brady* violation, this issue is waived for Appellant's failure to raise it at trial or on direct appeal, 42 Pa.C.S. § 9544(b), and because Appellant has not properly presented this issue as a layered ineffective assistance of counsel claim.

Concerning trial counsel's failure to pursue production of the information in order to obtain witnesses favorable to an alternative-perpetrator defense, Appellant must show: (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were prepared to cooperate and would have testified on Appellant's behalf; and, (5) that the absence of the testimony prejudiced the Appellant. *Commonwealth v. Crawley*, 541 Pa. 408, 415, 663 A.2d 676, 679–680 (1995) (citing *Commonwealth v. Gonzalez*, 415 Pa.Super. 65, 608 A.2d 528 (1992)). Failure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel,

unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense. *Commonwealth v. Peterkin,* 511 Pa. 299, 317, 513 A.2d 373, 382 (1986). Moreover, the value of a particular defense or witness' testimony is not judged abstractly in a vacuum; the defendant must sustain his burden of proving how the testimony of the uninterviewed witness would have been beneficial under the facts and circumstances of his case. *Commonwealth v. McNeil,* 506 Pa. 607, 616, 487 A.2d 802, 806 (1985).

 Here, Appellant does not allege sufficient grounds to support his claim of prior counsels' ineffectiveness. He does not allege that these witnesses concerning the earlier, unrelated incidents in Lawrence Park would have testified favorably for him. *See Crawley, supra.* Nor does Appellant clearly explain how these individuals would have established a viable alternate-perpetrator defense theory, particularly considering the physical evidence linking him to the crime scene. Appellant has not alleged sufficient facts to support his prima facie burden on this issue, and, accordingly, cannot show ineffective assistance of counsel for failing to pursue these unnamed witnesses.

### 6. *Failure to Challenge Affidavits*

Appellant's next layered ineffectiveness claim concerns an alleged failure to challenge the veracity of affidavits of probable cause contained in the search and arrest warrants. Initially, we note that the validity of the search and arrest warrants was challenged, unsuccessfully, in pretrial suppression motions filed by Appellant's counsel. Appellant presently alleges that discrepancies between the statements contained in the affidavits regarding possible sexual assault of the victim and the absence of evidence of sexual assault during the trial demonstrate that the affiants knowingly and intentionally made false statements to obtain the warrants. He also insists that there is further evidence of intentionally false statements in the arrest and search warrant affidavits in that police initially obtained a warrant to search for sandals containing blood, but

discovered shoes containing blood during their search for which they eventually obtained another warrant.

 Our review of the record does not support Appellant's allegations regarding perjury by the investigating officers. Dr. Rozwadowski, the pathologist who performed the autopsy, testified that there was no evidence of any injury or any type of fluid in the anal area of the victim, but that he could easily dilate the victim's anus. The pathologist stated that this dilation would not be unusual in a boy of the victim's age. This testimony is consistent with Officer Krahe's statements in the arrest warrant that the anus of the victim was "somewhat distended," and does not prove deliberate or willful falsehood by Officer Krahe in his affidavit for the arrest warrant that sexual assault may have been the motive for the killing. The remaining instances of an alleged perjury amount to no more than minor inconsistencies in trial testimony by some of the Commonwealth's witnesses, and in no way is evidence of a deliberate or willful falsehood. We will not find counsel ineffective for failing to pursue strategies that the record demonstrates have no merit.

### 7. *PCRA Counsel's Acquiescing in Suppression of Evidence*

Appellant's next layered ineffectiveness claim is that trial counsel was ineffective for "acquiescing" in the police and prosecutorial officials' supposed suppression of exculpatory evidence. The alleged suppression by the prosecution concerns Appellant's medical records. Appellant essentially repeats his earlier claim that trial counsel was ineffective for not pursuing these potential medical witnesses. For the reasons discussed above, this claim is wholly without merit and PCRA counsel will not be held ineffective for failing to raise it.

### 8. *Failure to Challenge Search Warrants*

Appellant claims PCRA counsel was ineffective for failing to raise all previous counsels' ineffectiveness for failing to assert the police officer's alleged perjury in connection with the probable cause affidavits used to obtain the search warrant for

Appellant's blood-stained shoes. Appellant claims that, because the police searched his room on July 27, 1981, and did not discover his blood-covered shoes during that search, the officers who applied for a subsequent search warrant on August 13, 1981, fabricated claims that they observed blood stains on the shoes discovered under Appellant's bed.

The record does not support Appellant's claim of perjury. The July 27, 1981 search warrant authorized the officers to search for "bloody clothing, weapons, any evidence of homosexual assault or physical attacks; any eyeglasses; 10–speed bicycle; any other evidence of criminal homicide." Based on this warrant, the officers seized some materials, including a piece of paper noting an appointment with Dr. Perry, Appellant's treating optometrist. Subsequently, on August 11, 1981, James Lynch, a witness who encountered Appellant the night of the murder, informed the police that he had seen Appellant wearing what he believed were brown sandals. The police obtained an additional search warrant of Appellant's room from that statement, to look specifically for a pair of sandals. During the execution of that search warrant, Officer Riffland searched under Appellant's bed and discovered a brown pair of shoes. When examining the shoes, the officer detected dried blood stains. The information gained from this search for the sandals served as the basis for the search warrant used to obtain the shoes containing stains of the victim's blood. We do not find the failure of the police to discover these shoes during the July 27, 1981 search as indicative of any deliberate false statements in the August 13, 1981 search warrant affidavits, and Appellant offers no substantive support from the record to give any merit to these accusations. We will not find counsel ineffective for failing to pursue a claim that has no merit.

### 9. Prosecutor's References to Appellant's Change in Appearance

Next, Appellant brings a layered ineffectiveness claim for trial counsel's failure to raise the prosecutor's allegedly improper references to the fact that Appellant had shaved his

beard and cut his hair after the murder and before the trial. It is entirely appropriate, however, for a prosecutor to comment on a defendant's change in appearance where such a change may affect the ability of trial witnesses to identify the defendant. *See Commonwealth v. Horwat*, 511 Pa. 398, 401, 515 A.2d 514, 516 (1986). Accordingly, since the prosecutor's comments were an appropriate response to Appellant's alteration of his appearance, counsel cannot be held ineffective for failing to pursue the issue.

### 10. *Missing Witness Instruction*

Appellant's tenth issue asserts a layered ineffectiveness claim for failure to raise Appellant's entitlement to a missing witness instruction concerning Commonwealth expert witness Dr. Demonaco. In its opening statements to the jury, the Commonwealth stated that it would present the testimony of Dr. Demonaco to verify that the prescription for the glasses found at the scene matched the prescription for Appellant's glasses. Although the prosecutor referred, in his opening statement, to the likely testimony of Dr. Demonaco, no such witness was ever presented to the jury. Generally, when a potential witness who is not called is available to only one party and can provide important testimony that is not merely cumulative, the jury may infer that the witness' testimony would have been unfavorable to the controlling party. *Commonwealth v. Camperson*, 437 Pa.Super. 355, 370, 650 A.2d 65, 72 (1994), *allocatur denied*, 540 Pa. 646, 659 A.2d 984 (1995). However, where the testimony of a witness is comparatively unimportant, cumulative, or inferior to other testimony already presented, such an inference cannot be drawn. *Id.* Here, the prosecutor presented the jury with the testimony of Dr. Moody Perry, Appellant's optometrist, that the glasses found at the murder scene were the exact prescription and frame style as the glasses sold to Appellant by Dr. Perry in January of 1981. This testimony from the prescribing optometrist as to the match between the glasses found at the murder scene and Appellant's glasses rendered any further testimony concerning the eyeglass prescription inferior, and,

accordingly, no missing witness instruction was warranted. We do not find counsel ineffective for failing to request this instruction when none was warranted.

### 11. *Use of Coroner Wood's Testimony*

Appellant claims that prior counsel was ineffective in failing to raise alleged prosecutorial misconduct because of the use of the testimony of the Coroner, Merle Wood, to establish the time of death. Appellant alleges that the time of death to which Wood testified differed from the time of death asserted by the Commonwealth in its opening statements to the jury, and that this difference prejudiced Appellant's ability to present his alibi defense. During direct examination, Wood testified that he arrived at the murder scene at approximately 3:00 p.m. on Friday. When questioned concerning the time of death, Wood testified:

A: Well, it's very difficult to estimate time of death other than if you do it within a short period of time or after rigor mortis has started to leave the body, which normally may be—it takes place twenty-four hours or so later after death. This had not started to leave the body yet. We estimated this was an estimation of possible twelve hours to fifteen hours anyway.

Q: Twelve to fifteen hours before you observed the body?

A: Yes.

Notes of Testimony, 1/19/82, p. 77. Since the coroner's testimony [13] stated a range for the time of death between midnight and 3:00 a.m. Friday, Appellant contends that trial counsel was ineffective for not raising a question of prosecutorial misconduct, when the prosecutor stated to the jury in his opening statement that Coroner Wood would testify that victim died between 8:00 p.m. Thursday and 3:00 a.m. Friday.

Remarks in a prosecutor's opening statement must be fair deductions from the evidence that he or she in good faith plans to introduce and not mere assertions designed

13. Dr. Jack Rozwadowski, the pathologist who performed the autopsy of the victim, testified that he was unable to establish a time of death.

to inflame the passions of the jury. *Commonwealth v. Brown,* 551 Pa. 465, 711 A.2d 444, 456 (Pa.1998); *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992). The prosecutor is not required conclusively to prove all statements made during the opening argument. *Brown,* 711 A.2d at 456. If the prosecutor has a good faith and reasonable basis to believe that a certain fact will be established, he or she may properly refer to it during the opening argument. *Id.* Even if an opening statement is somehow improper, relief will be granted only where the unavoidable effect is so to prejudice the finders of fact as to render them incapable of objective judgment. *Id.*

 We find that, upon review of the statements of the prosecutor and the testimony of Coroner Wood as a whole, Appellant is not entitled to relief on this claim. The prosecutor apparently made this statement concerning the time of death based on the coroner's testimony at the preliminary hearing. During closing arguments, the prosecutor acknowledged that Coroner Wood's estimate placed the time of death between midnight and 3:00 a.m. Friday, but pointed to additional testimony from the coroner concerning the continuation of rigor mortis that supported the Commonwealth's time frame for the murder. Furthermore, Appellant's counsel made repeated use of the coroner's time-of-death testimony in closing arguments to support his alibi defense. We cannot find that the prosecutor's remark in his opening statements so inflamed the jury as to render them incapable of objective judgment, in light of the prosecutor's correction of those remarks in closing arguments, and the favorable use of the coroner's testimony by the Appellant in his counsel's closing remarks.

## 12. *Double Jeopardy Bar*

Appellant alleges prior counsels' ineffectiveness in failing to raise a double jeopardy bar to his January, 1982 trial. In November of 1981, Appellant's case was scheduled for trial, and two days of jury selection proceeded before the Commonwealth asked that the trial be continued, which Appellant's counsel did not oppose. The trial court granted the Common-

wealth's request, the six jurors selected during the November, 1981 trial were dismissed, and a new jury empaneled for the January, 1982 trial. Appellant claims trial counsel was ineffective for failing to argue that double jeopardy barred his January, 1982 trial.

This claim is without merit. Double jeopardy attaches only when a defendant is put to trial before the trier of facts. *Commonwealth v. Thorpe*, 549 Pa. 343, 347, 701 A.2d 488, 489 (1997). For double jeopardy purposes, a trial begins when the jury is empaneled and sworn. *Commonwealth v. Sullens*, 533 Pa. 99, 104, 619 A.2d 1349, 1352 (1992). Here, double jeopardy did not attach during the aborted November proceedings, because the jury had not been empaneled and sworn.

### 13. *Allegations of Perjury by Investigating Officers*

Appellant brings two additional issues raising prior counsels' ineffectiveness where he again alleges perjury by the investigating officers in the affidavits upon which the search and arrest warrants were based. These claims merely restate, in more colorful form, the allegations Appellant raises in his earlier claims regarding purported perjury by the investigating officers, and similarly lack support in the record. Appellant is entitled to no relief on these claims.

Appellant claims ineffectiveness of all previous counsel for failing to impeach the testimony of Officer Mark Krahe based on allegedly false statements contained in the search and arrest warrant affidavits. Specifically, Appellant complains that the statements in the July 28, 1981 affidavits regarding possible sexual assault of the victim should have been used to impeach Krahe, because of the absence of any trial testimony indicating that the victim was sexually assaulted.

We cannot find any prejudice from trial counsel's failure to impeach Krahe on this basis. The testimony of the pathologist, Dr. Rozwadowski, established that the anus of the victim could be easily opened up. This tends to corroborate Krahe's statement in the July 28, 1981 affidavit that sexual

assault may have been the motive for the murder, based on his observation of the condition of the victim's anus when the body was discovered. The fact that subsequent investigation by the pathologist turned up no conclusive evidence of sexual assault, and that the Commonwealth did not pursue this theory at Appellant's trial, does not prove that Krahe's initial suspicions of possible sexual assault, based on his observation of the crime scene, were false. Further, counsel's decision not to impeach Krahe concerning his suspicions of sexual assault may have been to Appellant's benefit, since the introduction of police suspicion of sexual assault may have worked to Appellant's detriment. Finally, Appellant does not demonstrate a reasonable probability that the outcome of his trial would have been different had his trial counsel pursued this questionable method of impeachment. Absent a demonstration of prejudice, there can be no supportable claim of ineffective assistance of counsel. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

### 14. *Violation of Sequestration Order*

Appellant's next issue argues that prior counsel was ineffective for failing to object to the presence of Officer Krahe in the courtroom during the trial despite the sequestration order of the court. The decision of whether or not to sequester a witness is within the province of the trial judge and, absent a clear abuse of discretion, will not be reversed. *Commonwealth v. Albrecht*, 510 Pa. 603, 619, 511 A.2d 764, 772 (1986). The fact that a violation of a sequestration order occurs does not, in and of itself, lead to a finding that the prosecutor committed misconduct of such a nature that a new trial is required. *Commonwealth v. Pierce*, 537 Pa. 514, 529, 645 A.2d 189, 197 (1994). Appellant must show that the prosecutor's conduct was a deliberate attempt to mislead the jury. *Id.* Here, Appellant does not explain how Officer Krahe's presence caused him any prejudice, or how the prosecutor attempted to mislead the jury by having Officer Krahe present during other witnesses' testimony. Since Appellant proves neither prejudice nor prosecutorial misconduct from

Officer Krahe's presence during the testimony of other witnesses, he cannot claim ineffectiveness of prior counsel for failing to raise this issue.

### 15. *Failure to Impeach Commonwealth Witness*

The next claim of the Appellant is that previous counsel were ineffective in not raising trial counsel's ineffectiveness for failing to impeach one of the Commonwealth's witnesses, Linda Diane Walters, on the grounds that Ms. Walters allegedly was a known abuser of solvents. At trial, Ms. Walters testified that Appellant spent some time at her home for a few days following the murder. Ms. Walters testified that Appellant was watching television with her when the evening news was on, and that Appellant turned to her and asked her if the police could trace a suspect based on eyeglasses.

Appellant fails to demonstrate that he suffered prejudice due to trial counsel's failure to impeach Ms. Walters on grounds of her alleged solvents abuse.[14] Whether the jury would have found such impeachment sufficient to discredit Ms. Walters' account of Appellant's incriminating question concerning the eyeglasses, and whether such discrediting of Ms. Walters' testimony would have given the jury reasonable doubt in light of the physical evidence of the victim's blood on Appellant's clothing and the discovery of Appellant's eyeglasses at the crime scene, is entirely too speculative an inquiry. Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *See Commonwealth v. Morris*, 546 Pa. 296, 312, 684 A.2d 1037, 1045 (1996).

### 16. *Appellant's Prior Criminal History and Testimony*

Appellant next argues that previous counsel was ineffective for failing to raise trial counsel's ineffectiveness in

---

**14.** There is nothing in the record to support Appellant's contention that Ms. Walters in fact abused solvents.

questioning Appellant regarding two instances of his prior criminal misconduct. During Appellant's direct examination, trial counsel asked him of his convictions for stealing a go-cart in 1979 and for theft by deception in 1978. We reject Appellant's contention that this questioning constituted ineffective assistance of trial counsel. By taking the witness stand, Appellant opened the door to the Commonwealth to impeach him concerning these prior *crimen falsi* convictions. *See Commonwealth v. Bighum*, 452 Pa. 554, 563, 307 A.2d 255, 260 (1973) (Commonwealth may introduce in rebuttal evidence of prior convictions to attack the credibility of a defendant who has elected to testify in his own behalf). Trial counsel's strategic decision to introduce these convictions on direct examination of Appellant, to preempt the Commonwealth's less favorable introduction of these matters, was reasonable under the circumstances. *Cf. Commonwealth v. Birdsong*, 538 Pa. 587, 601, 650 A.2d 26, 32 (1994) (counsel's decision to disclose defendant's prior bad acts in order to show motive for the Commonwealth's witness to lie held a reasonable trial tactic). We will not hold counsel to be ineffective if there was a reasonable strategic basis for counsel's trial tactics. *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400 (1997).

Appellant's also claims former counsel were ineffective for failing to raise trial counsel's ineffectiveness for coercing Appellant into taking the witness stand, and for not objecting to the trial court's "falsus in uno, falsus in omnibus" instruction to the jury. The first portion of this issue lacks merit, as the record clearly shows that Appellant was fully aware that, by taking the witness stand, the Commonwealth could introduce his prior criminal convictions, but nevertheless Appellant voluntarily chose to do so. N.T., 1/22/82, p. 129. Appellant's statements on the record concerning his decision to testify on his own behalf contradict any claim that he was "coerced" into testifying. His position that trial counsel was ineffective for failing to object to the "falsus in uno, falsus in omnibus" instruction likewise lacks merit. Although the instruction has been criticized as superfluous, *Commonwealth v. Maute*, 336 Pa.Super. 394, 405, 485 A.2d 1138, 1144 (1984),

counsel will not be held to be ineffective if the instruction given was proper, *Commonwealth v. Tyler,* 305 Pa.Super. 15, 23, 451 A.2d 218, 222 (1982). Here, the prosecutor specifically requested at a sidebar conference that the charge be given, and the trial court reluctantly consented to give the charge, with no objection from Appellant's trial counsel. We do not, however, find that Appellant suffered any prejudice because of the charge given.[15] The trial court's "falsus in uno, falsus in omnibus" instruction applied to witnesses for the Commonwealth and Appellant's witnesses equally,[16] and we can see no particular prejudice to Appellant from this general instruction to the jury regarding its role in making credibility determinations of all witnesses.

### 17. *Miranda Violations*

Appellant next claims prior counsels' ineffectiveness for failing to raise appellate counsel's ineffectiveness for failing to appeal the denial of Appellant's motion to suppress statements Appellant made after his arrest.[17] Appellant alleges that he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights before making the statements; that trial counsel was aware that he had not voluntarily waived his *Miranda* rights; and that those statements should have been suppressed. He contends that the police initially informed him that he was being detained for questioning concerning an automobile theft, and that any waiver of his *Miranda* rights resulted from these misleading statements from the police.

**15.** The charge given failed to refer to "deliberate" or "willful" falsity on a "material" point, which Pennsylvania's Standard Jury Instruction 4.15 suggests should be included. *See also Maute, supra* (instruction proper if a witness "willfully and corruptly swears falsely"). However, mere error by the court in phrasing the instruction is insufficient for Appellant to obtain relief on this claim; he must show prejudice as a result of trial counsel's failure to object to the charge.

**16.** The trial court incorrectly told the jury that both parties had requested the instruction, when only the prosecutor had requested the instruction. However, by stating to the jury that both parties had requested the instruction, the trial court clearly attempted to prevent the jury from believing that the instruction applied only to Appellant or his witnesses.

**17.** Appellant's counsel moved to suppress the statements, but the trial court denied the motion.

■ Officer Krahe, the arresting officer, testified that Appellant was advised of his *Miranda* rights before questioning and that he signed a waiver card. Further, Officer Krahe testified that Appellant did not appear intoxicated and could understand the nature of the *Miranda* warnings. The officer also testified that, when Appellant requested an attorney thirty-seven minutes into his interrogation, the police ceased any further questioning. Accordingly, this testimony supported the trial court's determination that Appellant's statements were not given violating Appellant's *Miranda* rights, and Appellant's claim of trial counsel's ineffectiveness on this basis is without merit.

### 18. *Commonwealth's Alleged Failure to Produce Documents*

■ Appellant next claims that all previous counsel were ineffective in failing to insist that the Commonwealth comply with five orders from the Erie County Court of Common Pleas directing the Commonwealth to produce documents relevant to this case. According to Appellant, the Commonwealth has failed to comply fully with these orders, and, because previous counsel failed to request further action from the court to ensure full production, he is left without recourse to the full record to prosecute this *pro se* appeal. However, he fails to indicate with specificity what items the Commonwealth failed to produce, and how this alleged failure to produce prejudiced him on any of the specific claims of counsels' ineffectiveness that he presently asserts. Indeed, the extensive citation by Appellant to trial testimony and matters contained in search and arrest warrants demonstrate that he has not been denied access to the record, and we will not grant relief on a claim of counsel's ineffectiveness where there is no demonstration of prejudice.

### 19. *Appeal Bond*

Appellant asserts that this Court should grant him a nominal appeal bond so that he can gather sufficient witnesses and conduct his own investigation to support his case on appeal.

Appellant offers no authority to support this request, and we refuse to grant it, particularly as this appeal arises in the context of a post-conviction proceeding.

### 20. *Failure to Present Factual Issues on Appeal*

Appellant's next issue asserts that PCRA counsel was ineffective for failing to claim that appellate counsel was ineffective in the presentation of his direct appeal to this Court, resulting in alleged misstatements and mischaracterizations of the facts of record in this Court's opinion on Appellant's direct appeal. *See Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Assuming, *arguendo*, that there were errors in this Court's recitation of the facts in the disposition of Appellant's direct appeal, Appellant nevertheless alleges no connection between such error and an error in the decision of any legal issues in his appeal. Instead, Appellant uses this issue to argue that there was insufficient evidence to sustain his conviction, particularly with respect to the evidence of the victim's blood discovered on Appellant's shoes. Trial counsel's competency regarding the admission of the blood evidence against Appellant was previously litigated on Appellant's direct appeal. *See id.* at 228–229, 495 A.2d at 191–192. Accordingly, we cannot review this previously-litigated issue. 42 Pa.C.S. § 9544(a).

### 21. *Testimony Regarding Use of Rock as Murder Instrument*

Appellant alleges that all previous counsel were ineffective in failing to prevent the Commonwealth from presenting testimony concerning the use of a rock in the murder of the victim. Appellant asserts that this Court's statement in our opinion on his direct appeal that "[t]he nearest rocks were two hundred feet from the body and were similar to the rock used to strike the victim," *Commonwealth v. Pursell*, 508 Pa. 212, 219, 495 A.2d 183, 186 (1985), was erroneous, and that rocks similar to the one used to strike the victim could have been found nearer to the body. According to Appellant, the closer proximity between rocks similar to the one used to strike the victim and the body would have undermined the

prosecution's case that the murder was premeditated, based on the distance the rock was carried preceding the striking of the victim. Appellant engages in pure speculation and conjecture concerning the proximity of slag rocks to the location of the murder, and is contradicted by the testimony of Officer Krahe concerning the presence of rocks at the scene. He offers no authority to explain why the Commonwealth should have been prevented from presenting testimony regarding the blood-covered rock, and we cannot find merit in a claim that the record clearly contradicts.

## 22. *Pretrial Publicity*

Appellant's next issue claims that all prior counsel were ineffective in failing to present additional material concerning the pretrial publicity of this case, which would have resulted in a successful claim for a change of venue. This change of venue claim was raised and addressed by this Court on direct review. *See Pursell,* 508 Pa. at 220–223, 495 A.2d at 187–189. Consequently, this issue is not reviewable in a post-conviction proceeding. 42 Pa.C.S. § 9544(a)(2). Moreover, Appellant's drafting of the issue in terms of prior counsel's ineffectiveness for failing to present the claim vigorously is insufficient to overcome the bar to post-conviction review of previously litigated issues. *Commonwealth v. Christy,* 540 Pa. 192, 202, 656 A.2d 877, 881 (1995).

## 23. *Due Process*

Appellant asserts various violations of his rights to due process and the effective assistance of counsel under both the Pennsylvania and United States Constitutions. Essentially, Appellant bases this claim on the dismissal of his earlier *pro se* habeas corpus petition, and this Court's *per curiam* order affirming the dismissal of that petition and remanding to the court of common pleas for appointment of counsel on Appellant's amended PCRA petition. This Court has previously ruled on the propriety of the dismissal of Appellant's *pro se* habeas corpus petition, *Commonwealth ex rel. Pursell v. Mor-*

*gan,* 532 Pa. 296, 615 A.2d 732 (1992), and we will not review that decision here.

## C. *ISSUES ADDRESSED BY PCRA COURT*

We next examine the issues that were included in the amended PCRA petition. The Appellant first argues that the trial court violated Rule 9030 of the Rules of Criminal Procedure, which requires that all proceedings in open court be transcribed and recorded. Appellant also claims that trial counsel was ineffective because he did not make certain that all sidebar conferences were transcribed.

■■ The Appellant does not explain what allegedly was said during conferences that were not transcribed, nor does he explain how this alleged error has prejudiced him. This Court has repeatedly stated that claims made in a vacuum cannot provide a basis for relief. *Commonwealth v. Morris,* 546 Pa. 296, 684 A.2d 1037 (1996). Although the Appellant claims that the record is incomplete, he has not made a record of what the record does not include and he has not alleged any prejudice resulting from counsel's alleged failure. Because the Appellant has not claimed that he suffered any prejudice stemming from the alleged failure to transcribe sidebar conferences, this claim must fail.

The next issue in this appeal is the Appellant's claim that the trial court gave the following instruction that allegedly "nullified" one of the mitigating factors, 42 Pa.C.S. § 9711(e)(1), which he presented during the penalty phase:

> All the evidence from both sides, including the evidence you heard earlier during the trial in chief as to aggravating and mitigating circumstances, is important and proper for you to consider. Remember that we incorporated—we started out the second part of this trial, and we incorporated the record that was already made into the record of the sentencing you are to consider. You should remember all of the evidence that you used in making your deliberations when you decided the guilt of this defendant.

Specifically recall the testimony of Dr. Rozwadowski. *Recall the testimony of the history of the prior criminal convictions of the defendant, and recall any other matters concerning the record or the circumstances of the offense.* In other words, you may use in your deliberations of the penalty—for the penalty—all of the records that were made during the trial in which you determined his guilt.

Id. at 147–148. He also argues that trial counsel rendered ineffective assistance of counsel when they did not object to that portion of the jury instruction of the trial court.

When reviewing the jury instructions for reversible or prejudicial error, an Appellate court must read and consider the charge as a whole. *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). Error cannot be predicated on isolated excerpts of the charge, but it is the general effect of the charge that controls. *Id.* The trial court may refer to portions of the evidence during its charge, but it must remain absolutely impartial and not invade the province of the jury. *Commonwealth v. Whiting*, 501 Pa. 465, 462 A.2d 218 (1983).

At the trial of the guilt phase, the Appellant testified on his own behalf and denied that he committed the crime for which he was being tried and is now sentenced. The Appellant has two prior convictions for crimes involving *crimen falsi* that were admissible to impeach his credibility. During direct examination, defense counsel elected to question the Appellant about his prior record for crimes involving dishonesty. Specifically, defense counsel elicited from the Appellant that he was arrested for stealing a go-cart in 1979, which was theft, and he was arrested for passing a bad check in 1978. He pled guilty to both of those offenses. This testimony was the only evidence introduced pertaining to the Appellant's prior criminal record.

During the penalty phase, the defense relied on three mitigating factors: the Appellant's age, [18] 42 Pa.C.S.

---

**18.** Appellant was twenty-two years old when he killed thirteen-year-old Christopher Brine.

§ 9711(e)(4); his lack of a significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); and his character evidence, 42 Pa.C.S. § 9711(e)(8). During his closing argument in the penalty phase, defense counsel argued that the Appellant's prior criminal convictions, which were introduced during the guilt phase, were minor and did not constitute a significant prior history of criminal convictions.

▮▮▮ Because the evidence concerning the mitigating factor of Appellant's lack of a significant prior criminal record was introduced during the guilt phase of the trial, the court gave the challenged instruction. After thoroughly reviewing the instruction in the context of this entire trial, we reject the Appellant's claim that the trial judge "nullified" a mitigating circumstance. To the contrary, this instruction was neutral and may have benefited the Appellant by directing the jury's attention to his minimal record introduced earlier in the trial. Accordingly, no relief is due.

The next issue is whether the Appellant is entitled to a new sentencing hearing because the jury's verdict slip did not note which aggravating circumstance the jury found. Appellant relies on Rules 357 [19] and 358 [20] of the Pennsylvania Rules of Criminal Procedure, which require the trial court to furnish the jury with a sentencing slip that directs the jury to list the aggravating and mitigating factors it found. However, these

**19.** Rule 357 of the Pennsylvania Rules of Criminal Procedure provides in pertinent part as follows:

Rule 357. Sentencing Verdict Slip
(a) Jury
(1) In all cases in which the sentencing proceeding is conducted before a jury, the judge shall furnish the jury with a jury sentencing verdict slip in the form provided by Rule 358A.
(2) Before the jury retires to deliberate, the judge shall meet with counsel and determine those aggravating and mitigating circumstances of which there is some evidence. The judge shall then set forth those circumstances on the sentencing verdict slip using the language provided by law.
(3) The trial judge shall make the completed sentencing verdict slip part of the record.
Pa.R.Crim.P. 357.

**20.** Rule 358A provides a form for a jury sentencing verdict slip for juries to complete after they conclude their deliberations.

rules were adopted on February 1, 1989, which was long after the Appellant's trial concluded on January 26, 1982.

Moreover, it is undisputed that the only aggravating circumstance before the jury was whether the murder was committed by means of torture, 42 Pa.C.S. § 9711(e). The trial court specifically instructed the jury that it could only consider that one aggravating circumstance. N.T. 1/26/82, p. 145. This claim therefore has no merit.

## III. CONCLUSION

For the foregoing reasons, we affirm the Order of the Court of Common Pleas of Erie County that denied the Appellant's Amended PCRA Petition.[21]

---

**21.** The prothonotary of the Supreme Court of Pennsylvania is directed to transmit, within ninety days, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor, and notice of this transmission is to be given to the Secretary of Corrections, pursuant to 42 Pa.C.S. § 9711(i).