J-S11041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN H. CHAMBERS | : | |
| | : | |
| Appellant | : | No. 1311 WDA 2016 |

Appeal from the PCRA Order July 21, 2016
In the Court of Common Pleas of Warren County
Criminal Division at No(s):  CP-62-CR-0000361-2014

BEFORE:   OLSON, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                     **FILED MARCH 21, 2017**

Appellant, Martin H. Chambers, appeals from the July 21, 2016, order entered in the Court of Common Pleas of Warren County denying his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing.   After a careful review, we affirm.

The relevant facts and procedural history are as follows:  Appellant and the victim were in a romantic relationship, and after it ended, Appellant continued to send unwanted texts and make unwanted phone calls to the victim.   Becoming concerned for her safety, on September 25, 2014, the

_____

[*] Former Justice specially assigned to the Superior Court.

victim had an alarm system, which included a panic system, activated at her home.

On October 7, 2014, at approximately 3:00 a.m., as the victim attempted to go into her residence, someone grabbed her from behind, pulled her by the neck, and in a "really weird voice," ordered her to go into the house. N.T., Trial, 8/13/15, at 60, 64. Although he was attempting to disguise his voice, the victim recognized the person as being Appellant. *Id.* at 60. As Appellant pulled the victim into the house, Appellant told the victim she could turn off the alarm system. *Id.* at 61. Instead, unbeknownst to Appellant, the victim entered a four-digit panic code to alert the police that she was in need of assistance. *Id.*

Thereafter, Appellant pulled the victim into one of the rooms and removed her pants. *Id.* at 62. The victim struggled, and when she momentarily freed herself, Appellant knocked her down. *Id.* at 62-63. As the struggle continued, the police arrived and arrested Appellant.

On August 13, 2015, Appellant, who was represented by private counsel, Erika L. Mills, Esquire, proceeded to a jury trial, at the conclusion of which the jury convicted Appellant of criminal attempt (rape by forcible compulsion), burglary, aggravated indecent assault, criminal trespass,

stalking, unlawful restraint, false imprisonment, and indecent assault.[1] Following trial, Attorney Mills was granted permission to withdraw her representation, and Public Defender John R. Parroccini entered his appearance on behalf of Appellant. On November 13, 2015, Appellant was sentenced to an aggregate of one hundred months to two hundred months in prison. Appellant filed neither post-sentence motions nor a direct appeal.

On February 29, 2016, Appellant filed a timely, counseled PCRA petition, and following an evidentiary hearing at which Appellant and Attorney Mills testified, the PCRA court denied Appellant's petition on July 21, 2016. This timely, counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant contends the PCRA court erred in failing to find trial counsel was ineffective on the following basis:

1. Trial counsel refused to allow [Appellant] to present character witness[es];
2. Trial counsel failed to obtain and present documentation from a similar claim by the victim from Skokie, Illinois;
3. Trial counsel failed to present any lay or expert evidence of whether the victim's mental illness (Bi-Polar Disorder) would affect memory;
4. Trial counsel failed to obtain telephone records of text communications between [Appellant] and the victim immediately prior to the alleged assault;

---

[1] 18 Pa.C.S.A. §§ 901, 3502, 3125, 3503, 2709.1, 2902, 2903, and 3126, respectively.

5. Trial counsel failed to enlist the services of an investigator to assist in [Appellant's] defense.

Appellant's Brief at 12.

Initially, we note:

We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012) (citations omitted).

All of Appellant's claims allege the ineffective assistance of trial counsel. In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1177 (1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused Appellant prejudice. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523 (2009). "[Where] the underlying claim lacks arguable merit, counsel cannot be deemed

ineffective for failing to raise it." ***Commonwealth v. Koehler***, 614 Pa. 159, 36 A.3d 121, 140 (2012). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 600 Pa. 1, 963 A.2d 409, 419 (2009) (citation omitted). With this standard in mind, we address each of Appellant's claims.

With regard to Appellant's claim that trial counsel was ineffective in failing to present character witnesses on behalf of Appellant, Appellant is required to demonstrate:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.

***Commonwealth v. O'Bidos***, 849 A.2d 243, 249 (Pa.Super. 2004) (internal citations and quotation omitted).

Here, in rejecting Appellant's claim, the PCRA court set forth the following rationale in its opinion:

> At the time of the PCRA hearing, Appellant testified that he requested that trial counsel call character witnesses on his behalf and that she did not do as he requested. [N.T., PCRA hearing, 7/21/16, at 6-7.] Appellant did not elaborate as to the identity of any such witnesses or as to the testimony that they would

- 5 -

have provided had they been called.[2] [*Id.*] At the time of the PCRA hearing, trial counsel testified that she did not call character witnesses on Appellant's behalf, because she was aware of Appellant's prior criminal history, involving a domestic violence incident, involving his ex-wife[,] and trial counsel was concerned that had character evidence been presented, it would have opened the door to other damaging evidence that could then have been presented by the Commonwealth. [*Id.* at 13.] Trial counsel testified that she did not feel that such disclosures would have been in the best interests of [Appellant]. [*Id.*]

PCRA Court Opinion, filed 10/11/16, at 4-5 (footnote added).

Based on the aforementioned, the PCRA court concluded that Appellant did not meet his burden as he did not establish the identity of any character witnesses who would have been prepared to cooperate and testify favorably for him. *Id.* at 5. Alternatively, the PCRA court noted that trial counsel provided a reasonable, strategic basis for not calling character witnesses, in general, since such evidence would "open the door" for the Commonwealth to cross-examine the witnesses concerning bad-character evidence. *Id.*

We agree with the PCRA court's sound reasoning and conclude Appellant is not entitled to relief on this ineffective assistance of counsel claim. *Commonwealth v. Hull*, 982 A.2d 1020, 1023 (Pa.Super. 2009) ("Counsel has a reasonable, strategic basis for not calling character witnesses if he has a legitimate reason to believe that the Commonwealth would cross-examine the witnesses concerning bad-character evidence.")

---

[2] During the PCRA hearing, the PCRA court asked Appellant for the identity of the alleged character witnesses, and Appellant indicated that he did not have a list. N.T., PCRA hearing, 7/21/16, at 7.

(citations omitted)); ***O'Bidos***, ***supra*** (setting forth requirements to demonstrate counsel was ineffective in failing to present witnesses).

With regard to Appellant's claim that trial counsel was ineffective in failing to obtain and present documentation regarding a similar claim of sexual abuse the victim allegedly made against her ex-husband in Skokie, Illinois, we conclude that Appellant is not entitled to relief.

During the PCRA hearing, Appellant relevantly testified as follows on direct-examination:

> **Q:** Okay.  All right.  All right.  My next question, did you make [trial counsel] aware of a similar claim made by the victim in Skokie, Illinois now?
>
> **A:** Yes, sir.  I did.
>
> **Q:** And, did she follow up and get any type of documentation relating to that claim?
>
> **A:** I told her toward the end of November, early December of 2014 about this other, this similar claim.  And, I found out that she had called, but never, she never subpoenaed anything.  She called, I believe, in March, April, and maybe [ ] May or June. But, she never subpoenaed anything.
>
> And, we had never gotten anything from Skokie, Illinois Police Department.

N.T., PCRA hearing, 7/21/16, at 7-8.

Trial counsel relevantly testified as follows on direct-examination during the PCRA hearing:

> **Q:** Okay.  Thank you.  With regards to the allegations that something about a prior claim or present documentation from a similar claim by the victim in Skokie, Illinois.  What can you tell us about that?

- 7 -

**A:** [Appellant] made me aware of a, he told me about, he said that there was an incident in Skokie, Illinois in 2006, between the victim in this case, [] and her ex-husband.

Where, she had, apparently, made similar accusations against the ex-husband to what she made in the underlying case here.

I did request, I did make a Freedom of Information Act request of the village of Skokie. That request was transmitted to them via email on March 9th of 2015. I received a response back from them indicating that, that request was in progress as of March 10th. So, I know that they received it.

**Q:** Did you ever receive anything by way of records in regard to the victim in Skokie, Illinois?

**A:** I did not. No.

**Q:** So what, did you, strike that. So, there are no records from Skokie, Illinois, but you did make a request for them?

**A:** I did make a request, and I did not receive anything in response to that request. No.

**Q:** You were the defense counsel at the trial?

**A:** I was.

\*\*\*

**Q:** During that trial, did, was there any [*sic*] anything brought up about the Skokie, Illinois alleged claim?

**A:** My recollection, I believe [Appellant], himself actually had mentioned that during his testimony.

**Q:** Okay. And, is it fair to say that he testified about this issue [that allegedly occurred] in Skokie, Illinois?

**A:** I believe he did, to the best of my recollection, I believe he did.

*Id.* at 13-18.

A review of the jury trial transcript confirms that Appellant testified at trial as follows on direct-examination regarding the alleged Skokie, Illinois incident:

**A:** At 6:30 in the morning or 7:30 in the morning our time, 6:30 Chicago time, [the victim] calls me crying and drops the phone. And, her ex-husband gets on the phone, and I hear her yelling, I hate you, Joe. Why the F did you do that?

And she gets back on the phone. I said, what happened? She said, he took advantage of me while I was passed out. And, I could not believe this. I told her, I said, you need to call the cops. She called Skokie Police, hung up with me because they were there.

**Q:** Did she later tell you anything different about that incident?

**A:** Well, a week later, she was at the house with me, again, in my trailer, where the Sheetz is now in North Warren. I was in the trailer park there. And, we were drinking and I asked her about it.

I said, well, did you put your legs around him? She looked at the floor. And, I said, just tell me. She kind of nodded her head and said, yes.

I said, did you put your arms around him? She said, yes. I said, did you kiss him? She said, yes. Then I said, he didn't rape you [.] I said, you cheated on me.

And, she began to cry, begging me, please don't leave me. Please, please don't leave. We will work it out. Don't worry, we can work this out. We can work anything out.

**Q:** So, she admitted to you she wasn't faithful?

**A:** Yes. She admitted to me. She also had said that she was upset with the police in Skokie, because they had walked in the house, and instead of saying, Mr. St. Clair, they called him by his first name.

But, it's still the fact, you know, she is, she had done this back in 2006. And I even asked her, I said, why? She said, because I felt comfortable with him. I did. I felt really comfortable with him.

N.T., Trial, 8/13/15, at 156-57.

Based on the aforementioned, the PCRA court rejected Appellant's ineffectiveness claim for the following reasons:

1) The alleged Illinois incident is remote in time; 2) Appellant did not present any documentation of the incident at the time of his PCRA hearing and thus failed to establish that any such documentation existed; 3) Trial counsel sought to discover the existence of such documentation through the proper channels and was unable to substantiate the existence of such evidence despite her efforts; and 4) Even if such evidence did exist, trial counsel['s] failure to obtain and present documentation from a similar claim by the victim from Skokie, Illinois, did not present a reasonable probability that the outcome of the proceedings would have been different given the fact that Appellant was provided with a full and ample opportunity to testify[, and in fact did testify] as to these matters at the time of his trial.

PCRA Court Opinion, filed 10/11/16, at 6.

The PCRA court's determination is supported by the evidence of record and is free of legal error. **Ford**, **supra**. Simply put, Appellant has failed to demonstrate the three prongs necessary to establish a claim of ineffectiveness. **See Johnson**, **supra**.

With regard to Appellant's claim that trial counsel was ineffective in failing to present lay or expert evidence of whether the victim had a mental illness that affected her memory, we conclude Appellant is not entitled to relief.

Our Supreme Court has relevantly held as follows:

When a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony. The evidence can be said to affect credibility when it shows that the witness's mental disorganization impaired his or her capacity to observe an event at the time of its occurrence, to maintain a clear recollection of it, or to communicate the observation accurately and truthfully at trial.

- 10 -

*Commonwealth v. Davido*, 630 Pa. 217, 106 A.3d 611, 637 (2014) (citations omitted).

Initially, we note that, aside from his own self-serving testimony, which the PCRA court was free to reject, Appellant did not offer any evidence at the PCRA hearing establishing that the victim suffered from a mental illness, which affected her memory at the time of or after the incident at issue. Moreover, as trial counsel testified at the PCRA hearing, Appellant informed trial counsel that there was no indication the victim was actively involved in any type of psychological or psychiatric treatment. N.T., PCRA hearing, 7/21/16, at 19. Thus, trial counsel noted that there was no treating physician who could offer any kind of opinion regarding whether the victim suffered from a mental illness and, if so, whether such would have affected her memory. *Id.* In any event, trial counsel testified that the victim admitted at trial that her memory was "faulty" and not "perfect or [] clear on what had taken place" such that the defense "already had the acknowledgment that [the victim] couldn't remember well enough." *Id.*

Based on the testimony presented at the PCRA hearing, the PCRA court concluded trial counsel had a reasonable, strategic basis for not presenting lay or expert evidence of whether the victim had a mental illness that would affect her memory and, additionally, since the victim admitted that her memory was faulty, Appellant was not prejudiced. PCRA Court's

Opinion, filed 10/11/16, at 7. The PCRA court's determination is supported by the evidence of record and is free of legal error. *Ford*, *supra*.

With regard to Appellant's claim that trial counsel was ineffective in failing to obtain telephone records of text communications between Appellant and the victim which occurred immediately prior to the alleged assault, we conclude Appellant is not entitled to relief.

At the PCRA hearing, trial counsel testified that she, in fact, obtained the telephone records at issue. N.T., PCRA hearing, 7/21/16, at 20. Specifically, trial counsel testified:

> [T]he Commonwealth provided to me the entire disk with the data dump from the whole phone. There were 4,000 some pages worth of information there.
>
> This was provided to me literally on the eve of trial. This was provided to me [at] approximately 3:00 o'clock, I believe, the day before; maybe it was two days before, if I am remembering correctly.
>
> I did speak to [Appellant] about that at the time because I was concerned about being able to review all of that in the time period that we had left between when I received them and when the trial was going to take place.
>
> And, he did not want the trial to be continued. He wanted it over with. He wanted it done with. He wanted to move on with his life. And, he told me that the, he didn't feel that the text messages would show anything that helpful, anyway.
>
> I did review all of the text messages, anyway. And, I couldn't find anything that would have contradicted that he had no contact with [the victim] within the two weeks prior.
>
> And, I was also concerned reviewing them that there were messages in there that, where she is advising him to stop contacting her and things like that. And, I was concerned that if we tried to being that up, it would open the door to the rest of those messages also coming in.

*Id.* at 20-21.

As was within its province, the PCRA court found trial counsel's testimony to be credible. **See Ford**, **supra**. Specifically, the PCRA court concluded that trial counsel "not only obtained the records at issue, but also reviewed them and ultimately reached the conclusion that there was nothing that would have been helpful to Appellant. In fact, trial counsel felt that some of the records would [] be potentially harmful to Appellant." PCRA Court Opinion, filed 10/11/16, at 8. Accordingly, the PCRA court found no merit to Appellant's claim and, additionally, that trial counsel had a reasonable basis for not utilizing the telephone records. The PCRA court's determination is supported by the evidence of record and is free of legal error. **Ford**, **supra**.

With regard to Appellant's claim that trial counsel was ineffective in failing to enlist the services of an investigator to assist in Appellant's defense, it is well-settled that "the [f]ailure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel, unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense." **Commonwealth v. Pursell**, 555 Pa. 233, 724 A.2d 293, 306 (1999) (citations omitted).

Here, during the PCRA hearing, Appellant relevantly testified as follows on direct-examination:

**Q:** Okay. At any time were you aware whether or not [trial counsel] had enlisted the services of an investigator to assist in your defense?

**A:** I was never even offered about it. She never spoke about it. And, being she is [a] lawyer, I left it in her hands thinking that it was the right thing.

**Q:** Okay. Okay?

**A:** So, no. She never even mentioned an investigator.

N.T., PCRA hearing, 7/21/16, at 9.

Trial counsel admitted she did not enlist the services of an investigator and, explained, in relevant part, the following:

The reason for that was the, this incident was, there was no indication whatsoever that this occurred in any way or in any place other than inside a private residence, between two individuals.

There were no witnesses. No eye witnesses identified by [Appellant] that would have needed interviewing. There were two friends of [the victim's] that had been with [the victim] prior to the incident.

But, their statements were provided to me as part of discovery. I simply didn't feel that it was necessary to employ the services of an investigator. I didn't think it would reveal anything else.

*Id.* at 21-22.

Based on the aforementioned, we agree with the PCRA court that Appellant failed to demonstrate that an investigator would have been helpful to his defense. **See** PCRA Court Opinion, filed 10/11/16, at 9-10. Accordingly, trial counsel cannot be deemed ineffective on this basis. **See** **_Pursell_**, **_supra_**.

For all of the foregoing reasons, we affirm.

- 14 -

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017