J-S44016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY LUSTER | : | |
| | : | |
| Appellant | : | No. 1748 WDA 2018 |

Appeal from the PCRA Order Entered May 22, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010391-2013

BEFORE: SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: FILED DECEMBER 10, 2019

Gregory Luster appeals from the order of the Court of Common Pleas of Allegheny County that denied his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Luster claims that his trial counsel was ineffective. We affirm.

The trial court summarized the underlying facts as follows:

> At trial, Rashawn Hall, the victim in this case, testified that on July 11, 2013, he went to Howlers Bar with his cousin Michael Richardson. They left Howlers on foot to go to an after-hours establishment called Castle. On the way to Castle a man Hall did not recognize got out of his car and asked Hall if he knew a girl named Ashley Grooms. The man in the car specifically inquired whether Hall and Ashley were romantically involved.[1] Hall denied dating Ashley. The conversation between Hall and the man in the car quickly turned to an argument. The man in the car started to get

_____

[1] Hall testified that he and Ashley had been in a non-exclusive relationship. He said that Ashley told him that she had a child with a man named Greg but that she and Greg were no longer together. (Footnote in original).

out of the car but was restrained by the driver. Richardson pulled Hall away and the two of them went into Castle.

Hall and Richardson left Castle at approximately 3:45 a.m. after having spent ninety minutes inside. Hall had been consuming alcohol earlier but did not have any drinks at Castle. Hall testified that the same gray car approached him while he and Richardson were walking home. The same man that he had previously encountered got out of the car, said "talk that shit now," and shot Hall in the leg. Richardson ran off, then doubled back and called the police after the shooter left the scene.

Hall failed to identify the shooter at trial. However, Hall did recall his prior testimony at the preliminary hearing that Appellant was the shooter. At trial, Hall testified that the shooter was taller than [sic] and had a lighter complexion than Appellant. Hall testified that his view of Appellant at the preliminary hearing was obstructed by three police officers. Hall also testified that he told police officers at the hospital where he had been taken that he thought his shooter's name was Greg and that Greg lives on the hill. Hall gave a physical description of the shooter while he was at the hospital. He said the man stood approximately five foot, ten inches tall, was "pudgy and soft looking," with dark skin. Hall was initially unable to identify the shooter from the photo array. Hall testified that he later texted Detective Daniel Zeltner, "Sorry, I couldn't say it was him, I [sic] at the hospital, I [sic] never be allowed back in my neighborhood." Hall testified that he was shown a photo array a second time, outside the presence of others, and identified Appellant as the person who had shot him. Hall explained at trial that he chose Appellant because Detective Zeltner said "That's Gregory Luster, did he shoot you."

Next, Hall testified that he wrote a letter on October 8, 2013 requesting that all charges against Appellant be dropped. Ashley's mother, Donna Grooms, drove Hall to the Public Defender's Office to deliver the letter. Hall testified that he told an assistant district attorney on January 10, 2015 that he had been threatened and stated, "This has to go away." He denied that he told Detective Zeltner that Ashley asked him to drop the charges. Hall stated that he told Detective Zeltner that he was afraid that word would get back to his cell block if he testified. He said he didn't

want "paperwork back to the block." In March of 2015, Hall told Detective Zeltner that Hall was given a letter saying "he should not be a snitch, that the cops are not your family."

City of Pittsburgh Police Officer Donald Snider testified that he was the first officer at the scene and observed that Hall had been shot in both legs. Officer Snider later interviewed Hall at the hospital. Hall told the officer that Greg shot him after the two had an argument over Ashley Grooms.

Detective Zeltner also interviewed Hall at the hospital. Detective Zeltner testified that Hall "had gone to the after-hours club. He had an argument with a male named Greg over Ashley Grooms. He was just - as he was walking home, he was shot." Hall further told Detective Zeltner that Greg was the father of Ashley Grooms' child. Detective Zeltner testified that Hall gave a physical description of Greg to the Detective, saying he was "about 5'10", soft and pudgy, dark skin." Detective Zeltner testified that Appellant matched the physical description which Hall provided.

Detective Zeltner testified that he showed Hall a photo array on two occasions. The Detective initially showed Hall a photo array at the hospital. An individual unknown to the Detective was present with Hall at the time, and Hall did not choose anyone from the array. Hours after the initial array, Hall texted the Detective to tell him that Hall couldn't identify his assailant with the unidentified person in his hospital room. Hall said that he did not want to be labeled a snitch. Hall again told Detective Zeltner that Gregory Luster shot him. When Hall was shown the array a second time with nobody else present, Hall identified Appellant by circling Appellant's photograph and initialing it.

Detective Zeltner further testified that he was present at a meeting between Hall and an assistant district attorney on January 10, 2014. At that meeting, Hall stated that he wanted the case to go away, not because Appellant didn't shoot him, but because Hall had received a phone call that his son had been threatened. Hall also indicated that Ashley asked him to drop the charges.

Trial Court Opinion, filed September 14, 2016, at 3-6 (citations to trial transcript omitted).

After trial, Luster was convicted of aggravated assault and carrying a firearm without a license. He was sentenced to 102 to 240 months of incarceration, followed by three years of probation. Luster thereafter filed an appeal. On May 16, 2017, this Court affirmed the judgment of sentence. Commonwealth v. Luster, 2017 WL 2130282 (No. 552 WDA 2016) (Pa. Super. 2017) (unpublished memorandum). The Pennsylvania Supreme Court denied Luster's petition for allowance of appeal on October 24, 2017. Commonwealth v. Luster, 173 A.3d 259 (Pa. 2017).

On December 11, 2017, Luster filed a pro se PCRA petition. The court thereafter appointed counsel for Luster and counsel filed an amended PCRA petition on March 27, 2018. On April 30, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without an evidentiary hearing, stating that the petition was "patently frivolous and without support in the record." PCRA Court Order dated April 30, 2018. On May 22, 2018, the PCRA court dismissed the petition.

Luster filed a pro se Notice of Appeal on June 27, 2018, i.e., more than 30 days after the order dismissing his PCRA petition. Luster's counsel filed a motion to withdraw as counsel, which was granted. The PCRA court appointed new counsel who, recognizing the untimeliness of Luster's pro se Notice of Appeal, discontinued the appeal and filed a PCRA petition seeking reinstatement of Luster's appellate rights nunc pro tunc. This petition stated

that Luster was compelled to file his pro se Notice of Appeal late because his former counsel abandoned him after his repeated attempts to contact her to file an appeal on his behalf. The Commonwealth did not object to the petition and the PCRA court granted it, finding that "the Petitioner was denied the opportunity to file a direct appeal through no fault of his own." PCRA Court Order dated November 29, 2018.

Luster then simultaneously filed a timely appeal and a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court authored a Pa.R.A.P. 1925(a) opinion in which it explained its reasons for dismissing the PCRA petition.

Luster raises the following three issues for our review:

1. Did the trial court err in denying Appellant's PCRA Petition since trial counsel...was ineffective for failing to obtain the victim's medical records since the records contained the names of witnesses and hospital staff that could have been interviewed by the defense in order to glean exculpatory evidence[?]...

2. Did the trial court err in denying Appellant's PCRA Petition since trial counsel...was ineffective for failing to call alibi witnesses...at trial, after she had interviewed the witnesses prior to trial and filed a Notice of Alibi three months prior to trial[?]...

3. Did the trial court err in denying Appellant's PCRA Petition since trial counsel...was ineffective for failing to include closing argument indicating that the Commonwealth had failed to prove the essential element of serious bodily injury since the Commonwealth declined to admit the victim's medical records, which constituted evidence regarding his alleged injuries, into evidence; hence, Appellant was prejudiced?

Luster's Br. at 3-4 (unnecessary capitalization omitted).

We review an order denying relief under the PCRA to determine whether the record supports the PCRA court's findings and the decision is free of legal error. Commonwealth v. Ragan, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's factual findings deference if the record supports those findings. Commonwealth v. Brown, 48 A.3d 1275, 1277 (Pa.Super. 2012). The appellant has the burden of convincing this Court that the PCRA court erred and that relief is due. Id.

There is a presumption that counsel is effective. Commonwealth v. Andrews, 158 A.3d 1260, 1263 (Pa.Super. 2017). In order to prevail on a claim that counsel was ineffective, the petitioner must establish three things: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." Commonwealth v. Daniels, 963 A.2d 409, 419 (Pa. 2009).

In deciding whether counsel lacked a reasonable basis, "a court will not find counsel to be ineffective if the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest." Commonwealth v. Williams, 899 A.2d 1060, 1063-1064 (Pa. 2006)

- 6 -

(quoting Commonwealth v. Rivera, 773 A.2d 131, 140 (Pa. 2001), cert. denied, 535 U.S. 955 (2002)). "If counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective." Id. at 1064.

Luster first contends that trial counsel was ineffective for failing to obtain the victim's medical records after the victim had been shot in the legs. Luster's Br. at 15. Luster argues that the medical records contained the names of witnesses and hospital staff who could have been interviewed by trial counsel in order to collect exculpatory evidence. Id. Luster maintains that he "was prejudiced by [t]rial [c]ounsel's omission since the jury was foreclosed from any exculpatory evidence that could have been mined from a review of the victim's medical records (which were never admitted by either party into evidence at trial)." Id.

Luster's claim is based on theory and mere speculation. "It is easy to say that failing to pursue exculpatory evidence is ineffectiveness, but this presumes the evidence will indeed be exculpatory." Williams, 899 A.2d at 1064. Luster fails to specify any exculpatory evidence that the medical records allegedly contained or how the information therein would have produced a different outcome. "Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Commonwealth v. Pursell, 724 A.2d 293, 311 (Pa. 1999). Any

alleged prejudice from trial counsel's failure to obtain such records is pure speculation.

Further, Luster's trial counsel was given the opportunity to examine the victim's medical records at the end of the first day of trial. N.T., 9/18/15, at 117-118. The next day at trial, Luster's counsel requested that the medical records not be admitted due to their late disclosure by the Commonwealth. N.T., 9/19/15, at 123.  Specifically, Luster's counsel stated:

> I think at this point I would ask at this time that [the medical records] not be admitted. I don't think it rises to the level - - if we are talking mistrial, I don't think it necessarily rises to that level.

> I also discussed with Mr. Luster it is not our intention with those records - although we do think a lot of information is in there that could have proven helpful, we don't feel as though it rises to that level.

> We are comfortable proceeding, but I would ask that they don't be admitted.

Id. The Commonwealth agreed to withdraw its motion to enter the medical records and the medical records were never entered into evidence. Id. at 121-122. It is apparent from the record that counsel was given the chance to review the medical records and confer with Luster about said records, yet counsel ostensibly decided that the records were of no evidentiary value and that their late submission did not warrant a mistrial. Accordingly, Luster's argument is without merit.

Next, Luster claims that trial counsel was ineffective for failing to call Autumn Groomes, Donna Groomes, Austi Groomes and Courtney Marshall as

alibi witnesses at trial. Luster's Br. at 16. Luster contends that trial counsel interviewed these four witnesses prior to trial and they provided alibi witness information that contradicted the victim's statement to the police and the Commonwealth's testimony against Luster. Id. at 17. Luster argues that although trial counsel filed a Notice of Alibi prior to trial, trial counsel did not call the alibi witnesses to testify at trial. Id. Luster asserts that had the alibi witnesses been summoned and provided testimony at trial, then he likely would have been acquitted of all charges. Id. at 17-18. Luster's argument fails.

In order to establish that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Johnson, 966 A.2d 523, 536 (Pa. 2009) (quoting Commonwealth v. Washington, 927 A.2d 586, 599 (Pa. 2007)). "The failure to call a possible witness will not be equated with a conclusion of ineffectiveness, absent some positive demonstration that the testimony would have been helpful to the defense." Commonwealth v. Jones, 652 A.2d 386, 389 (Pa.Super. 1995) (quoting Commonwealth v. Poindexter, 646 A.2d 1211, 1217 (Pa.Super. 1994)) (emphasis in Jones). Further, "[a] failure to call a witness is not per se ineffective assistance of counsel for such decision

usually involves a matter of trial strategy." Commonwealth v. Auker, 681 A.2d 1305, 1319 (Pa. 1996); see also Poindexter, 646 A.2d at 1216 (stating that "[t]he decision whether to call a witness generally involves a matter of trial strategy").

Here, Luster has not stated what the potential witnesses would have said, what information they knew, or how it would have benefited him. Further, Luster fails - by signed certification, affidavit or otherwise - to provide any objective proof that these witnesses actually exist, or that they were ready, willing and able to testify on his behalf at trial. Rather, Luster baldly states that these witnesses "provided alibi witness information that contradicted the victim's statement to the police and [the] Commonwealth['s] testimony against [Luster]" and if they "had been summoned and provided alibi testimony for [Luster] then the likely result would have been an acquittal of all charges[.]" Luster's Br. at 17-18. Since counsel is presumed to be effective, we will not deem her ineffective for failing to call alibi witnesses based solely on unsubstantiated allegations regarding the witnesses' existence and willingness to testify on Luster's behalf. See Commonwealth v. Lopez, 739 A.2d 485, 496 (Pa. 1999). Accordingly, Luster is not entitled to relief on this claim.

Lastly, Luster contends that trial counsel was ineffective for not arguing in her closing argument that the Commonwealth's failure to admit the victim's medical records into evidence indicated that the Commonwealth could not have proven the essential element of serious bodily injury regarding the

aggravated assault charge. Luster's Br. at 18. Luster asserts that he was prejudiced by counsel's omission "since the jury was not provided with information with which it could have properly assessed whether the victim suffered serious bodily injury[.]" Id. Luster is not entitled to relief.

The admission of a victim's medical records is not necessary to prove that the victim suffered serious bodily injury for an aggravated assault charge, and Luster has not cited any authority to the contrary. Further, the trial court properly instructed the jury on what was required to find serious bodily injury and the jury found the existence of serious bodily injury without the introduction of the medical records. N.T., 9/19/15, at 220-223. Moreover, the trial court instructed the jury that arguments made by counsel are not evidence. Id. at 211. "It is well settled that the jury is presumed to follow the trial court's instructions[.]" Commonwealth v. Cash, 137 A.3d 1262, 1280 (Pa. 2016). Luster has not proven that but for counsel's alleged error, there is a reasonable probability that the outcome of the proceeding would have been different. Luster's claim, therefore, fails.

For the foregoing reasons, we affirm the PCRA court's order denying Luster's PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/10/2019</u>