J-S17036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ANTHONY MARKIJOHN, II | : | |
| | : | |
| Appellant | : | No. 489 WDA 2022 |

Appeal from the PCRA Order Entered April 22, 2022
In the Court of Common Pleas of Lawrence County
Criminal Division at No(s):  CP-37-CR-0000445-2015

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 3, 2023**

Appellant, Joseph Anthony Markijohn, II, appeals from the order entered in the Lawrence County Court of Common Pleas, which dismissed his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court set forth the relevant facts of this case as follows:

> On December 28, 2014, Kaitlyn Kerezsi and Appellant, her boyfriend at the time, had planned to visit his friend, Joseph Pagley (the "Decedent"), in New Castle.  The Decedent supplied Appellant with marijuana.  However, when Ms. Kerezsi woke that morning, Appellant informed her that only he would be traveling to New Castle.  He packed a bag with a change of clothes and left in his green Jeep Cherokee around 1 p.m.
>
> Between 5:30 and 6:00 p.m., wearing a new sweatshirt, Appellant returned from New Castle with five pounds of marijuana and a large amount of cash.  The pair went to a

local Walmart, purchased a safe and glass jars, returned home, and proceeded to repackage the marijuana. Appellant began selling this marijuana to friends the following day.

This was more marijuana than Ms. Kerezsi had seen previously in Appellant's possession. When asked about the large quantity, Appellant suggested to Ms. Kerezsi that he and the Decedent had robbed a rival marijuana growing operation. According to Appellant, he had used a small pistol to shoot a lock on the shed containing the marijuana. Appellant told Ms. Kerezsi that he disposed of the gun and that she should deny he had possessed one.

Earlier that day, the Decedent informed his girlfriend, Shayna Magno, that he had plans to meet someone from out of town at his house and that, therefore, she had to leave. Ms. Magno left, met a friend, and began using heroin. Apparently, the Decedent concluded that Ms. Magno was using heroin, which precipitated an argument between the two via text messaging and cellphone calls. However, at 3:32 p.m., the Decedent's phone was turned off, and Ms. Magno had no further contact with him.

Sometime between 3:00 and 4:00 p.m., Appellant met the Decedent at the Roupp residence. Surveillance video later recovered from a local business showed Appellant's Jeep Cherokee following the Decedent's vehicle in the direction of the Decedent's house at 3:44 p.m.

Over the next several hours, Ms. Magno tried repeatedly but unsuccessfully to contact the Decedent. Eventually, at 10:40 p.m., Ms. Magno was able to reach a mutual friend, David Roupp. She inquired as to the Decedent's whereabouts, but Mr. Roupp had not seen or heard from him.

Ms. Magno returned to the Decedent's house. His vehicle was parked outside; the front door was unlocked; however, the home was unlit, and he did not appear to be there. Unnerved by this, Ms. Magno again called Mr. Roupp, who came to the house. Upon searching the basement, Mr. Roupp discovered the Decedent's dead body.

An investigation ensued. Police recovered three .25 caliber shell casings in the basement surrounding the Decedent's body. In addition, an autopsy determined that the cause of his death was three gunshot wounds to the head, and the manner of death was homicide. Each of the three .25 caliber slugs recovered from his head had been fired from the same weapon.

Although he would later deny it, Appellant possessed a .25 caliber pistol. Appellant's mother gave him such a pistol for protection sometime in 2014. Ms. Kerezsi observed a small pistol hidden underneath Appellant's mattress. In addition, Mr. Roupp had witnessed Appellant threaten another friend with a small, black pistol during an argument. Finally, Appellant had posted pictures of a .25 caliber pistol on social media. Following his arrest, Appellant directed Ms. Kerezsi to shut down his social media accounts, and she complied.

On December 30, 2014, Terrance Albright, a random passer-by, found an iPhone under a guardrail close to the Smolen-Gulf Bridge in Ashtabula, Ohio, where Appellant resided. Guessing the manufacturer's default password and unlocking the phone, Mr. Albright learned that it belonged to the Decedent. He contacted the Decedent's father, who in turn contacted the police. The bridge is approximately 3.5 miles from Appellant's home and 85 miles from the Decedent's house.

On December 31, 2014, executing a search warrant on Appellant's home, police discovered and seized several pounds of marijuana. The marijuana was stored in jars labelled "Blue Dream" and "Fu Dawg." Text messages exchanged between Appellant and the Decedent, prior to their meeting, referenced these particular brands. Further, notwithstanding his story of the rival robbery, Appellant acknowledged that he had been present in the Decedent's house as late as 4 p.m. on the date of the murder and that the marijuana seized from his home had come from the Decedent's house.

Police arrested Appellant and charged him with murder and robbery. …

***Commonwealth v. Markijohn***, No. 827 WDA 2019, unpublished

memorandum at 1-5 (Pa.Super. filed January 22, 2020) (internal citations and footnotes omitted), *appeal denied*, 661 Pa. 484, 236 A.3d 1052 (2020).

A jury convicted Appellant of first-degree murder and robbery. On December 5, 2018, the trial court sentenced Appellant to life imprisonment. This Court affirmed Appellant's judgment of sentence on January 22, 2020, and our Supreme Court denied Appellant's petition for allowance of appeal on June 29, 2020. *See id.*

Appellant filed a timely PCRA petition on December 18, 2020. The court conducted hearings on May 25, 2021, September 9, 2021, and November 1, 2021. The PCRA court summarized the testimony from the PCRA hearings as follows:

> [On May 25, 2021, Appellant] presented the testimony of his trial counsel, Steven Valsamidis, Esquire, concerning numerous aspects of his representation of [Appellant]. Attorney Valsamidis recalled having conversations about retaining a private investigator. However, it was unlikely a private investigator would have been able to locate the grow shed robbed by [Appellant] and Decedent as [Appellant] could not recall the route they traveled to get to that location. Attorney Valsamidis believed that could be used by the Commonwealth to damage [Appellant's] credibility if he hired a private investigator and they were unable to locate the shed. At the conclusion of that conversation with [Appellant], Attorney Valsamidis asked [Appellant] if the private investigator would find the grow shed and if he wanted to hire a private investigator. [Appellant] remained silent and Attorney Valsamidis understood that to mean he did not wish to hire a private investigator at that time. Attorney Valsamidis also did not believe hiring a private investigator to investigate Ms. Magno would have been productive as the defense was based upon someone associated with the grow shed being the perpetrator and Ms. Magno was not involved with that operation. Although,

- 4 -

Attorney Valsamidis acknowledged Ms. Magno was a person of interest in the homicide based upon the testimony of one of the Pennsylvania State Troopers.

Attorney Valsamidis also explained he did not feel it was necessary to file a notice of alibi defense as Defendant's version of events left the possibility he was in New Castle at the time of the homicide. Under those circumstances, Attorney Valsamidis did not believe an alibi defense or instruction to the jury was necessary.

[Appellant's] counsel inquired as to why Attorney Valsamidis did not file a motion *in limine* as it pertained to [Appellant's] lip tattoo of the word "Kill." It was his opinion that tattoo is easily explainable because [Appellant] was a Marine years earlier and he believed it demonstrated desperation on behalf of the Commonwealth to emphasize the tattoo. In relation to a prior incident in which another individual became upset at [Appellant's] mother's residence and began destroying her bedroom causing [Appellant] to brandish a .25 caliber pistol, Attorney Valsamidis did not file an objection as there was no basis to do so because the Commonwealth was introducing it for the legitimate purpose of demonstrating [Appellant] possessed a firearm to impeach his prior statement to the Troopers denying possession of a firearm. At the time that was presented to the jury, the Commonwealth did not know whether [Appellant] was going to testify.

When questioned about calling character witnesses to testify on [Appellant's] behalf, Attorney Valsamidis indicated they attempted to locate witnesses. He had conversations with several of [Appellant's] friends from his time in the military about appearing at trial, but they had not been around [Appellant] for an extended period of time. [Appellant] identified several potential character witnesses and Attorney Valsamidis recalled having conversations with at least two of them. He then explained two of the witnesses he spoke with had not been in [Appellant's] company for a "significant period of time". In addition, Attorney Valsamidis recalled one of those individuals, Hunter Bernard, left a message for Attorney Valsamidis indicating he was unavailable for trial. Attorney Valsamidis did not subpoena Mr. Bernard based upon his belief subpoenaing a witness who is supposed to

be favorable but is not cooperative often will not result in favorable testimony.

Another hearing was scheduled for September 9, 2021, to allow for further testimony to be presented. On that date, [Appellant] testified concerning his statement to Troopers Gustafson and Birckbichler on December 31, 2014. [Appellant] admitted he lied to them about possessing the firearm because he feared he would get into trouble for providing it to Decedent. Following the interview, [Appellant] was arrested and transported to Lawrence County, Pennsylvania. Initially, [Appellant] was represented by Lawrence J. Keith, Esquire, and Dennis A. Eliseo, Esquire, of the Lawrence County Public Defender's Office; however, [Appellant] wanted a change of counsel due to not receiving responses to his inquiries. The [c]ourt then appointed John J. Bongivengo, Esquire, to represent [Appellant], who [Appellant] never actually met because he privately retained Attorney Valsamidis. They thoroughly discussed the events of December 28, 2014, which included [Appellant's] reasoning for providing the firearm to Decedent. [Appellant] indicated he lied about it to the Troopers as Decedent had a felony conviction and it is illegal to provide a firearm to a convicted felon. [Appellant] also indicated Attorney Valsamidis was aware of his description concerning the location of the shed he and Decedent broke into and from which they stole marijuana.

According to [Appellant], he and Attorney Valsamidis never discussed hiring a private investigator or about cell phone technology. Conversely, they spoke about potential character witnesses and, according to [Appellant], he provided Attorney Valsamidis with the names Hunter Bernard, Coralyn Thompson and Edward Crawford, II. [Appellant] stated those individuals were willing to testify on his behalf as character witnesses.

Another hearing was held on November 1, 2021, to permit [Appellant] to present the testimony of two of his proposed character witnesses, Edward Crawford, II, and Coralyn Thompson. Mr. Crawford testified he has never been convicted of a felony or any crime of dishonesty. He is familiar with [Appellant] as they previously worked together at Ringer Screen Print in approximately 2013. Their families

- 6 -

were friends and [Appellant] used to "hang out" at his house when they were younger. Mr. Crawford and [Appellant] would often socialize after work until [Appellant] was arrested for Decedent's homicide. Eventually, [Appellant's] mother, Anna Dixon, contacted Mr. Crawford to ask him to testify on [Appellant's] behalf as a character witness, but he did not recall receiving a telephone call from Attorney Valsamidis. Mr. Crawford testified he was ready, willing and able to testify to [Appellant's] good character at trial. However, Mr. Crawford was never subpoenaed by Attorney Valsamidis to appear at trial. On cross-examination, Mr. Crawford stated he probably would not have traveled here to testify at trial as "this is all nervous to me, I guess, you know, nerve wracking...." He also explained he would have been upset if he were compelled to testify at trial. Mr. Crawford indicated he was in [Appellant's] presence when he used and sold marijuana.

Ms. Thompson also testified at that hearing and explained she has been a friend of [Appellant] since [Appellant] was in the first grade. The last time she saw [Appellant] was in 2013 at her brother's funeral, but they kept in touch through regular communications via the telephone. They lost touch briefly then [Appellant] began contacting her by telephone during his incarceration. As trial was approaching, [Appellant] and Ms. Dixon asked Ms. Thompson if she would be willing to be a character witness for [Appellant]. Attorney Valsamidis did not contact Ms. Thompson concerning her willingness to testify at trial. Ms. Thompson indicated she has not been convicted of any felonies or crimes of dishonesty. She stated she was ready, willing and able to testify on [Appellant's] behalf as a character witness. On cross-examination, Ms. Thompson testified she did not appear at trial because she was not compelled to do so but would have attended if she received a subpoena. She also indicated she knew [Appellant] was a marijuana user but did not know he dealt marijuana.

(PCRA Court Opinion, filed 5/20/22, at 8-12).

On April 22, 2022, the PCRA court issued its order denying PCRA relief.

Appellant timely filed a notice of appeal on April 28, 2022. The PCRA court

subsequently ordered Appellant to file a concise statement of errors complained of on appeal, and Appellant complied on May 12, 2022.

Appellant raises the following nine issues on appeal:

1. Whether the PCRA court erred by denying Appellant a new trial based on ineffective assistance of counsel because trial counsel unreasonably failed to call character witnesses on Appellant's behalf at trial?

2. Whether the PCRA court erred by denying Appellant a new trial on the basis of ineffective assistance of trial counsel for failing to file a notice of alibi and pursue that defense at trial by requesting an alibi jury instruction?

3. Whether the PCRA court erred in denying Appellant a new trial based on ineffective assistance of trial counsel because of trial counsel's concessions (twice) during closing argument establishing the window of time when death occurred when the Commonwealth could not establish a time of death and said concessions contradicted the defense that Appellant was not the last person to see the decedent alive?

4. Whether the PCRA court erred in denying Appellant a new trial for trial counsel's failure to hire a private investigator to explore various issues crucial to preparing and presenting a defense at trial?

5. Whether the PCRA court erred when it failed to grant Appellant a new trial based on ineffective assistance of counsel when trial counsel failed to file a motion *in limine* or object on record at trial to prejudicial evidence introduced by the Commonwealth?

6. Whether the PCRA court erred by denying Appellant relief in the form of a new trial for its findings of facts are not supported by the record and its conclusions a product of legal error, on the issue of trial counsel's testimony that decedent's killer(s) followed Appellant home and planted a cell phone, when no such theory or evidence was ever presented at trial?

7. Whether PCRA counsel [was] ineffective for failing to properly preserve issues related to DNA testing of physical evidence in his concise statement of matters complained of on appeal?

8. Whether the [PCRA] court erred in not appointing an expert to conduct DNA testing on the cigarette butt found at the crime scene?

9. Whether this Court should remand the case to the [PCRA] court to allow DNA testing of a cigarette butt pursuant to 42 Pa.C.S.A. § 9543.1(d)(1)?

(Appellant's Brief at 1-2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Craig Cox, we conclude Appellants first through sixth issues on appeal merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of those claims. (**See** PCRA Court Opinion at 13-21, 23-24) (finding: (1) trial counsel

had reasonable basis not to call character witness who was unwilling or reluctant to testify, and counsel had reasonable basis not to call witness whom he was unaware of at time of trial and who did not know Appellant well in any event; (2) counsel was not ineffective for declining to file notice of alibi when Appellant testified he was with Decedent on day of homicide; timeframe of events set forth by Appellant did not render it impossible for him to have been with Decedent at time Decedent was killed; thus, alibi instruction would not have been appropriate; (3) counsel had reasonable basis for arguing that time of Decedent's death was between 3:30 p.m. and 6:30 p.m. because such timeline aligned with defense theory of case that perpetrators followed Appellant after murder to Ashtabula, Ohio, where they disposed of Decedent's cell phone; (4) counsel was not ineffective for failing to hire private investigator to locate grow shed where Appellant was unable to provide adequate explanation of location of grow shed, which could have called into question Appellant's version of events from day of murder; further, Appellant did not establish how investigation into Ms. Magno and her associates would be helpful to his defense; (5) counsel was not ineffective for failing to object to or file motion *in limine* concerning evidence of Appellant's lip tattoo reading "KILL" or his Twitter post about shooting guns, where evidence was introduced to impeach Appellant's testimony that he was peaceful and loving "hippie"; counsel also acted reasonably in failing to object to testimony concerning unrelated incident of Appellant brandishing firearm because Commonwealth

introduced that testimony to show that Appellant had possessed firearm; moreover, court gave curative instruction concerning this testimony (6) trial counsel testified at PCRA hearing that defense presented at trial was predicated upon involvement of owners of grow shed, and that Decedent's death was act of retribution for Appellant and Decedent robbing shed; although Appellant now claims that trial counsel provided "false narrative" about owners of shed occupying vehicle that followed Appellant to Ohio after murder, Appellant was well aware of defense throughout trial and he testified consistently with defense theory of case; PCRA court found trial counsel's testimony credible concerning defense strategy at trial based on testimony and evidence of record). The record supports the PCRA court's analysis of Appellant's first through sixth issues, and we affirm on the basis of the PCRA court's opinion concerning those claims of error. **See Ford, supra**. **See also Dennis, supra**.

In his seventh issue, Appellant raises a layered claim of ineffective assistance of counsel. He argues that PCRA counsel was ineffective for failing to include in the concise statement of errors complained of on appeal, Appellant's claim that trial counsel was ineffective for failing to pursue DNA testing of a cigarette butt found near Decedent's body. Appellant acknowledges that PCRA counsel raised the issue of trial counsel's ineffectiveness on this ground in his PCRA petition, but Appellant insists PCRA counsel was ineffective for failing to include this issue in his Rule 1925(b)

statement, constituting waiver of the claim on appeal.[1]

As to the underlying claim of trial counsel's ineffectiveness, Appellant argues that he smoked a different brand of cigarette than the one found near Decedent's body and that testing of the cigarette butt would reveal exculpatory evidence of the identity of the true killer. Appellant contends trial counsel had no reasonable basis for failing to seek DNA testing and counsel's refusal to pursue such testing prevented Appellant from establishing a third-party culpability defense. Appellant concludes trial counsel was ineffective on this basis, and PCRA counsel was ineffective for failing to preserve this claim of error on appeal. We disagree.

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is

---

[1] Appellant presented his claim of PCRA counsel's ineffectiveness at the first opportunity to do so. We will review this claim based on our Supreme Court's decision in **Commonwealth v. Bradley**, ___ Pa. ___, ___ 261 A.3d 381, 400 (2021) (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").

a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims." ***Commonwealth v. Rivera***, 816 A.2d 282, 292 (Pa.Super. 2003), *appeal denied*, 573 Pa. 715, 828 A.2d 350 (2003) (quoting ***Commonwealth v. Pursell***, 555 Pa. 233, 724 A.2d 293, 304 (1999)). Consequently, "[p]ost-trial counsel will not be deemed ineffective for failing to raise and preserve meritless challenges to the effectiveness of trial counsel." ***Id.*** (quoting ***Commonwealth v. Thuy***, 623 A.2d 327, 335 (Pa.Super. 1993)).

Instantly, the PCRA court evaluated Appellant's claim of trial counsel's

ineffectiveness for not pursuing DNA testing. In its opinion denying PCRA relief, the court explained:

> [Trial counsel,] Attorney Valsamidis[,] did not believe it was prudent to test the Camel cigarette for DNA for fear it may contain [Appellant's] DNA. Moreover, Attorney Valsamidis wanted to leave the door open to attack the lack of DNA testing of the Camel cigarette butt as part of the overarching narrative [that] the investigation conducted in this case was done in a "sloppy" manner. The [c]ourt recognizes the risks and benefits of testing the DNA on the Camel cigarette butt. Attorney Valsamidis made a reasonable decision to forego seeking a DNA expert concerning the cigarette butt in lieu of continuing the narrative [that] the investigators did not conduct a thorough investigation despite this being a homicide case. Plus, [Appellant] testified he smoked a different brand of cigarettes which supported his rendition of events that someone else killed Decedent and left the cigarette butt. The [c]ourt will not second guess Attorney Valsamidis's trial strategy when his decisions had reasonable grounds contained within the record.

(PCRA Court Opinion, filed 4/22/22, at 23-24).

The record supports the PCRA court's analysis that trial counsel had a reasonable basis not to pursue DNA testing of the cigarette butt. *See Boyd, supra*. *See also Dennis, supra*. Trial counsel did not overlook the cigarette butt as evidence; rather, he incorporated it into the defense strategy. Although Appellant's current counsel insists that the strategy employed was wrong, we do not judge the reasonableness of trial counsel's approach in hindsight. *See King, supra*. As PCRA counsel cannot be deemed ineffective for failing to preserve a meritless claim, we conclude that Appellant is not entitled to relief on this layered claim of ineffectiveness. *See Rivera, supra*.

In his final two issues, Appellant argues the PCRA court erred when it

- 14 -

denied his motion for DNA testing,[2] which Appellant filed during the pendency of this appeal, on August 4, 2022. Because the order on appeal concerns the denial of PCRA relief and not a ruling on Appellant's August 4, 2022 motion, any claims concerning this motion are not properly before us at this time.[3] Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/3/2023

---

[2] We note that although a motion for DNA testing "falls under the aegis" of the PCRA, this Court has long differentiated between petitions for relief under section 9534 of the PCRA and motions for DNA testing under section 9543.1 of the PCRA. **Commonwealth v. Kunco**, 173 A.3d 817, 823 (Pa.Super. 2017). A motion for DNA testing under section 9543.1 is not a PCRA petition, "[r]ather, it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition." **Commonwealth v. Tyler**, 234 A.3d 750, 753 (Pa.Super. 2020) (citations and internal quotation marks omitted). "[A]lthough the legislature placed section 9543.1 within the larger statutory framework of the PCRA, the litigation of a motion for DNA testing is, in substance, a wholly separate proceeding from litigation of a PCRA petition." **Id.** (citations and internal quotation marks omitted).

[3] We note that, according to the docket entries, the PCRA court has not ruled on Appellant's August 4, 2022 motion. On August 12, 2022, Appellant filed a motion in this Court to remand for DNA testing, which this Court denied on August 29, 2022, without prejudice to Appellant's right to argue any properly preserved issues in his appellate brief. As the August 4, 2022 motion for DNA testing is not properly before us and is still pending before the PCRA court, we decline Appellant's request for remand.