J-S45009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                       :
           v.                           :
                                       :
                                       :
DANIELLE ELIZABETH BEWLEY     :
                                       :
           Appellant              :   No. 475 MDA 2023

Appeal from the Judgment of Sentence Entered January 24, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001180-2021

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:         **FILED: DECEMBER 20, 2023**

Danielle Elizabeth Bewley appeals from the judgment of sentence of life imprisonment imposed following her conviction for first-degree murder. We affirm.

On the evening of February 14, 2021, Appellant killed her estranged husband Mitchell Bewley ("Victim") in a bank parking lot, using a gun she had retrieved from a friend earlier that day. The shooting was seen or heard by people using the bank's ATM and by nearby residents, as well as by a friend of Appellant with whom she was engaged in a FaceTime video call before and during the shooting. In subsequent telephone calls, Appellant told her mother, her sister, and a former paramour that she killed Victim. Appellant was

---

[*] Former Justice specially assigned to the Superior Court.

arrested later that night after a stand-off with police. The firearm used in the shooting was recovered from her car upon execution of a search warrant.

Appellant elected to proceed to a non-jury trial. The Commonwealth's theory of the case was that Appellant lured Victim to the parking lot that night to perform a premeditated execution. Appellant attempted to secure a voluntary manslaughter verdict, asserting that Victim was abusive, Appellant was suffering from multiple mental illnesses, and the killing was done under the sincere, but unreasonable, belief that it was necessary to defend herself.

It was not until after the testimony of the Commonwealth's first witness, the officer who was first dispatched to the scene of the crime, that the parties requested that the trial witnesses be sequestered. Although the court granted sequestration, Michael Bewley and Robin Sweigart, Victim's parents whom the Commonwealth intended to call as witnesses, remained in the courtroom while numerous other witnesses testified to the events of February 14, 2021. After ten Commonwealth witnesses testified, Appellant's counsel brought the non-sequestration of Victim's parents to the court's attention.

Appellant asserted that Victims' parents should not be permitted to testify based upon the violation of the court's sequestration order. The Commonwealth invoked the Crime Victim's Act ("the Act") to justify their continued presence. In particular, the Commonwealth noted that the Act provides that victims of crime have the right:

> To not be excluded from any criminal proceeding unless the court, based on the record before it, determines that testimony by the

victim would be materially altered if the victim heard other testimony at the proceeding. Before making a determination, the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim. The reason for any exclusion shall be clearly stated on the record.

18 P.S. § 11.201(2.1) (effective August 27, 2019 to January 8, 2023). For purposes of the Act, the term "victim" includes family members of homicide victims. *See* 18 P.S. § 11.103.

Appellant argued that the language of the statute indicated that the determination whether the testimony "would be materially altered if the victim heard other testimony" had to be made before the fact, but the Commonwealth improperly failed to bring the Act to the court's attention before allowing Victim's parents to observe the other witnesses. Appellant asserted that conducting an inquiry into whether the testimony of Victim's parents would be altered at the point where they had "already heard damning, emotional, very dramatic testimony" would be "kind of wasted." N.T. Trial, 12/8/22, at 235. The Commonwealth countered that, since the testimony Victim's parents would offer concerned "previous acts leading up to the date of the incident," there was no risk that what they heard from other witnesses about the day of the shooting would impact their own testimony, rendering any error harmless. *Id*. at 235, 275.

The trial court, noting that the testimony for which Victim's parents had been present concerned "largely the day of the incident" itself, overruled Appellant's objection and permitted them to testify, indicating that it would,

- 3 -

in its role as fact-finder, "give consideration to the sequestration issue in assessing credibility." *Id*. at 276. Victim's father proceeded to testify that, while the relationship between Victim and Appellant "could be rocky at times," he had never observed Victim to be abusive toward Appellant or seen bruises on Appellant. *Id*. at 265, 267. Rather, the only violence he witnessed was a time when Appellant took a "swing once at [Victim.]" *Id*. at 273. Victim's mother testified that in November 2020, Appellant had threated to kill Victim for lying and cheating, which prompted Victim's mother to call the police. *Id*. at 278-80. She also indicated that Appellant had said that if Appellant could not have Victim, then no one could. *Id*. at 282.

At the conclusion of the five-day trial, the court found Appellant guilty of murder in the first degree. Appellant was sentenced to life imprisonment on January 24, 2023. Appellant filed a timely post-sentence motion which the trial court denied by order of February 27, 2023.[1] Appellant filed a timely

_____

[1] The order denying Appellant's post-sentence motion was docketed as a "scheduling order." This Court directed the trial court to correct the docket entry. Instead, the docket was changed to list the February 27, 2023 order as an order denying post-**conviction** relief. We again contacted the trial court. Instead of the docket entry being corrected, it was removed altogether. Since the order had been entered on the docket, albeit erroneously, and is contained in the certified record, our jurisdiction is not impaired by the subsequent misadventures. *See*, *e.g.*, *Commonwealth v. Carter*, 122 A.3d 388, 392 (Pa.Super. 2015) (exercising jurisdiction despite defects in the entry of order on the docket by treating as done what ought to have been done). Nonetheless, we direct the trial court to assure upon remand that the February 27, 2023 order is re-entered on the docket as one denying Appellant's motion for post-**sentence** relief.

notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following question for our determination:

Did the trial court err in admitting the testimony of Commonwealth witnesses Michael Bewley and Robin Sweigart, who attended the trial prior to their testimony despite a sequestration order, where the Commonwealth did not alert the court to the fact that it had allowed [Victim]'s parents to be present without asking the court to first rule on whether their presence would materially alter their testimony, pursuant to 18 P.S. § 11.201?

Appellant's brief at 5 (footnote omitted).

We begin with a review of the applicable legal principles. The sequestration of witnesses is governed by Pa.R.E. 615, which provides as follows:

At a party's request the court may order witnesses sequestered so that they cannot learn of other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize sequestering:

> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person (including the Commonwealth) after being designated as the party's representative by its attorney;
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> (d) a person authorized by statute or rule to be present.

Pa.R.E. 615.

Our Supreme Court has indicated that "[t]he fact that a violation of a sequestration order occurs does not, in and of itself," require the grant of

- 5 -

relief. **Commonwealth v. Pursell**, 724 A.2d 293, 310 (Pa. 1999). Rather, the appellant must establish that the violation was a deliberate attempt by the prosecution to mislead the jury or that it caused the appellant to suffer prejudice. **Id**. Possible remedies "include ordering a mistrial, forbidding the testimony of the offending witness, or an instruction to the jury." Pa.R.E. 615, *Comment* (citing **Commonwealth v. Scott**, 436 A.2d 161 (Pa. 1981)). "[A] mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the [fact-finder] from weighing and rendering a true verdict." **Commonwealth v. Rose**, 172 A.3d 1121, 1127 (Pa.Super. 2017) (cleaned up).

The choice of remedy for a violation of a sequestration order is within the discretion of the trial court. **Id**. "In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial." **Id**. (cleaned up). "We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken." **Id**. (cleaned up).

Here, the trial court rejected the Commonwealth's invocation of the Crime Victim's Act as a statute that, pursuant to Pa.R.E. 615(d), precluded the exclusion of Victim's parents despite the sequestration order, deeming it

to be "*ad hoc*" and "uncompelling."[2]  Trial Court Opinion, 5/30/23, at 5.  The court offered the following explanation for its decision to allow Victim's parents to testify despite the violation of sequestration:

> In this matter, the parents of [Victim] observed the testimony of ten Commonwealth witnesses prior to being excluded from the courtroom in advance of their testimony.  . . . [T]he testimony of the ten witnesses focused extensively on the day of the shooting, the autopsy performed on [Victim] by the forensic pathologist, and the cellular telephone records of [Appellant]. Through these witnesses, the Commonwealth offered only limited testimony regarding the nature of the relationship between [Appellant] and [Victim].  Conversely, the testimony presented by the parents of [Victim] addressed the troubled relationship between [Victim] and [Appellant].  Accordingly, their testimony was not prejudicially impacted by the violation of the sequestration order.
>
> It must also be recognized that this matter was disposed by means of a non-jury trial.  As such, this court considered the violation of the sequestration order in deciding the weight to give the testimony of [Victim's] parents.  The violation of the sequestration order had no impact on the decision rendered by this court.
>
> Although this court considers any violation of a sequestration order to be a serious concern, given the multitude of evidence presented by the Commonwealth, [Appellant] is unable to establish any identifiable prejudice or that she failed to receive a fair trial.  Additionally, there exists no evidence suggestive that the violation of the court's sequestration order was anything other than inadvertent on the part of the attorney for the Commonwealth.

*Id*. at 6-7.

---

[2] Since we conclude that no relief is due even assuming *arguendo* that the Crime Victim's Act did not give Victim's parents the right to remain in the courtroom after sequestration was ordered, we need not decide in this appeal the precise mechanics of the statute's interplay with Pa.R.E. 615.

Appellant argues that the trial court abused its discretion in declining to preclude Victim's parents from testifying because, despite the trial court's finding to the contrary, "it seems clear that the violation was knowing and deliberate" such that "the court should have given more weight to this fact in determining a proper remedy." Appellant's brief at 15. She claims that Victim's parents hearing witnesses testify that Appellant had claimed that she was afraid of Victim, and that Victim had abused and threatened Appellant in the past, "could not have helped but color [their] testimony toward wishing to protect [their] son from these allegations." *Id*. at 16. Appellant additionally complains that, through hearing the prosecution's opening statement, Victim's parents learned that the Commonwealth's theory of the case was that Appellant was the controlling partner in the relationship and that she premeditated the killing. *Id*. at 18-19.

We are unpersuaded by Appellant's arguments. First, Appellant did not request sequestration until after the Commonwealth presented its opening and its first witness, so the presence of Victim's parents during the opening statement was not a sequestration violation. Second, the fact that an attorney from the appellate division of the district attorney's office utilized the time during a lunch recess to formulate an argument based upon the Crime Victim's Act does not imply that the Commonwealth's violation of the sequestration order was knowing and willful. *See* N.T. Trial, 12/8/22, at 232-33.

Consequently, we have no cause to disturb the trial court's credibility assessment on that front.

Finally, it is axiomatic that "[t]he purpose of sequestration is to prevent a witness from molding his testimony with that presented by other witnesses." *Interest of N.A.P.*, 216 A.3d 330, 335 (Pa.Super. 2019) (cleaned up). The testimony offered by Victim's parents did not relate to any specific incidents discussed by another witness whom they observed before they took the stand. We discern nothing in the certified record to suggest that testimony favorable to their son and unfavorable to Appellant was purposefully molded to corroborate or contradict the evidence offered by the Commonwealth's prior ten witnesses.

In sum, the trial court decided that the remedy for the sequestration violation was equivalent to what would have been, in a jury trial, an instruction to consider the violation in weighing the witnesses' testimony. *See* Trial Court Opinion, 5/30/23, at 6 n.18 (citing *Scott*, *supra*). Upon hearing the testimony, the court concluded that the witnesses did not mold their testimony to fit that of other witnesses and, therefore, Appellant was not denied a fair trial or otherwise prejudiced. Since our review of the trial transcripts reveals that there were reasonable grounds for the trial court's exercise of discretion, Appellant is not entitled to relief. *See Rose*, *supra* at 1127.

Judgment of sentence affirmed.

Judgment Entered.

![signature](Benjamin D. Kohler)

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/20/2023